(No. 19011.—

THE STERLING-MIDLAND COAL COMPANY, Defendant in Error, *vs.* THE CHICAGO-WILLIAMSVILLE COAL COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

A. M. FITZGERALD, and H. C. MOORE, for plaintiffs in error.

CHARLES S. ANDRUS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Sterling-Midland Coal Company, a corporation, filed in the circuit court of Sangamon county an amended bill of complaint against the Chicago-Williamsville Coal Company, a corporation, and William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch, Harry Devereaux, Eugene Colgan and Edgar H. Buckley, directors and stockholders of the latter corporation, for an accounting of the money received from the sale of that corporation's property and a decree that the defendants pay a judgment recovered by the complainant against the corporate defendant. A joint and several answer was filed by the defendants. They also filed an amended cross-bill to which a demurrer was sustained. The suit was dismissed as to the defendants Devereaux and Colgan. Evidence was offered before a master in chancery and was reported by him without his

conclusions. After considering the evidence the court dismissed the bill for want of equity at the complainant's costs. The complainant prosecuted an appeal to the Appellate Court for the Third District and that court reversed the decree and remanded the cause to the circuit court with directions to enter a decree requiring Ryan, Kapp, Sankey, Hatch and Buckley to pay the judgment recovered by the Sterling-Midland Coal Company with the accrued interest thereon by a short day to be fixed by the court, and in default of such payment, to render a judgment against them for the sum of the indebtedness. The cause is here for a further review upon a writ of *certiorari*.

The complainant alleged in its amended bill that the Chicago-Williamsville Coal Company owned a coal mine in Sangamon county which, on May 29, 1920, the company sold to Leslie J. Pulliam for a sum believed to be in excess of $100,000; that by the sale the company divested itself of all its property and became insolvent; that, at the time of the sale, the company owed the complainant $4617.06, for which, on April 14, 1924, the latter recovered a judgment in the circuit court of Cook county; that the judgment remains unpaid; that the individual defendants were stockholders and directors of the corporate defendant at the time of the sale and that it was their duty to apply the proceeds in satisfaction of the corporation's debts, including the judgment recovered by the complainant, but that, instead of doing so, they distributed the entire proceeds of the sale amongst themselves.

The defendants, by their answer, denied that the Chicago-Williamsville Coal Company divested itself of its property or that it became insolvent or that the alleged indebtedness of $4617.06 was owing to the complainant; they admitted that a judgment for that sum had been recovered against the corporate defendant and that the judgment remained unsatisfied, but they averred that the judgment had been fraudulently obtained because, prior to the existence

of the alleged indebtedness, the two coal companies entered into a contract whereby the complainant undertook to sell, at the highest prices obtainable, practically all the coal which the corporate defendant might produce at its mine from January 2, 1919, until March 31, 1920; that, by the contract, the defendant company was bound to ship the coal upon orders from the complainant and that the latter should receive, as the compensation for its services, in each instance, eight per cent of the sale price, except for coal sold to the Chicago and Alton Railroad Company, in which case the compensation was fixed at seven per cent; that, notwithstanding the duty of the complainant not only to obtain the highest prices for the coal, but also to report such prices, and, deducting its agreed compensation, to account therefor to the defendant company, yet the complainant sold coal to various persons at prices in excess of those reported and converted the difference to its own use, thereby defrauding the corporate defendant out of large sums of money, and that, to conceal knowledge of the fraud, the complainant falsified its books, records and reports and has since persisted in such concealment. The defendants, by their answer, denied that the proceeds of the sale of the coal mine were distributed amongst the individual defendants and they denied that the complainant was entitled to an accounting or to any other relief.

The Chicago-Williamsville Coal Company was incorporated in this State on March 14, 1917, for the purpose of mining coal. Its property consisted of a coal mine located at Selbytown, in Sangamon county. The Sterling-Midland Coal Company, the defendant in error, is a corporation engaged in selling coal and has its principal office in the city of Chicago. On December 31, 1918, the two companies entered into the contract the substance of which has been stated in the review of the answer to the amended bill. During the period fixed by the contract, the output of the mine was approximately two hundred thousand tons of coal,

practically all of which was sold upon orders from the defendant in error and delivered to various consignees. Remittances in settlement were made monthly by the defendant in error, and from these remittances it deducted its compensation.

On May 29, 1920, Ryan, Kapp, Sankey, Hatch and Buckley were the directors, and Buckley, Ryan and Kapp were respectively the president, treasurer and secretary of the Chicago-Williamsville Coal Company. By a deed bearing date that day, executed in behalf of the company by Buckley as president and Kapp as secretary, the mine was conveyed to Leslie J. Pulliam. Revenue stamps in the sum of $200, indicating a consideration of $200,000, were affixed to the deed, but there was no direct evidence that the indicated consideration was the price actually paid for the mine.

Kapp, Ryan and Sankey owned one thousand shares, or half of the capital stock of the Chicago-Williamsville Coal Company, and the remaining half of the stock was owned by Buckley and Hatch. The owners of each half constituted a faction and the two were not in harmony in the conduct of the company's business and there had been litigation between them. Kapp, Ryan and Sankey sold their shares for $66,000, each receiving $22,000. Hatch had seventy-five shares, sold them for $10,000, and received two notes for $5000 each in payment of the purchase price. In the sale of their shares of stock, all these stockholders dealt with Buckley, and they delivered their certificates to him before the mine was sold. Both Sankey and Hatch testified that they never attended a meeting, either of stockholders or directors, at which a sale of the mine was discussed or authorized, and that they took no part in any negotiations concerning the transfer of the mine or the price to be paid for it. Kapp, Ryan and Sankey testified that they were ignorant of the price, how it was paid, or what arrangement Pulliam, the purchaser, had with Hatch

and Buckley. It does not appear that any stockholders' or directors' meeting was held at which the sale of the mine was authorized. The company had no property other than the mine and its equipment, and after their sale, it ceased to do business. How the proceeds of the sale were distributed, the record fails to disclose.

Plaintiffs in error make several contentions for a reversal of the Appellate Court's judgment. One is that the burden of proving the existence of an indebtedness from the Chicago-Williamsville Coal Company to the defendant in error on May 29, 1920, rested upon the latter and that the record contains no proof to support this essential element of its case. It is alleged in the bill that at the time the mine was sold, the Chicago-Williamsville Coal Company was indebted to the defendant in error in the sum of $4617.06. The plaintiffs in error, by their answer, deny this allegation. It was incumbent upon the defendant in error to prove the existence of the indebtedness, at the time of the sale, as charged in its bill. The period during which the defendant in error undertook to sell practically the whole output of the mine, as fixed by the contract, expired on March 31, 1920. That contract required the defendant in error to report to the Chicago-Williamsville Coal Company the prices at which the coal had been sold and to make remittances in payment, deducting only its compensation. The ordinary course of business between the two coal companies would make the defendant in error the debtor and not the creditor. On May 29, 1920, practically two months after the contract had expired, the mine was conveyed and nearly four years more elapsed before the judgment, which is the basis of the instant suit, was recovered. The evidence fails to disclose when the alleged indebtedness was incurred, the amount claimed or when the suit was instituted. The allegation of the bill that a judgment was recovered on April 14, 1924, although admitted by the answer, does not establish the existence of an indebt-

edness on May 29, 1920. Unless the Chicago-Williamsville Coal Company was actually indebted to the defendant in error at the time the mine was conveyed, there is no basis for the relief sought. No such showing has been made and, for that reason, the defendant in error has failed to discharge the burden which rested upon it.

It is further contended by the plaintiffs in error that Kapp, Ryan, Sankey and Hatch merely sold their shares of stock and delivered their stock certificates in consummation of the sales, and that they neither sold, nor had the power to sell, the mine or any share or interest in it. Kapp, Ryan and Sankey together held one thousand shares of stock. They formed one faction which, with respect to the conduct of the corporation's affairs, was unfriendly if not hostile to the other faction. They sold their shares for $66,000, each receiving $22,000 in money. They testified that the purchasers of the stock sought control of the corporation and that the sale of the stock had no connection with the sale of the mine. Hatch, who was allied with Buckley, sold his shares, seventy-five in number, for $10,000, but he received notes, and not money, in payment. Kapp, Ryan and Sankey received $66, while Hatch received $133.33 per share, and they all dealt with Buckley and delivered their stock certificates to him. Whether Buckley sold his shares of stock and if so, what he received for them does not appear. If the sale of the stock and the sale of the mine constituted one and the same transaction, as the defendant in error contends, the proceeds after the payment of the corporate debts, would necessarily have been distributed equally per share amongst the stockholders. The evidence shows a deed from the Chicago-Williamsville Coal Company, executed by Buckley as president and Kapp as secretary, conveying the mine to Pulliam, but it fails to disclose any negotiations by any of the individual plaintiffs in error concerning the sale of the mine or the price to be paid for it. The record is also silent with respect to any

corporate action, authorizing the conveyance, the receipt of the purchase price or the distribution of the proceeds of the sale. The stockholders of a corporation do not hold the title to its property. They have only a right to participate in the management of the business and its net profits, and, upon a termination or dissolution of the corporation, to a proportion of the assets after the payment of the corporate debts. A stockholder can neither reduce property of the corporation to possession nor can he convey or transfer it. He is not an owner in any legal sense of any portion of the corporation's property. He has, however, an interest in the corporation of which he may make disposition by a transfer of his shares of stock. (*People* v. *Dennett*, 276 Ill. 43; *Cummings* v. *People*, 211 id. 392; *Sellers* v. *Greer*, 172 id. 549.) The evidence shows that Kapp, Ryan, Sankey and Hatch merely sold their shares of stock, and that they, in their transactions, neither contemplated nor effected a sale of the mine.

It is also urged by the plaintiffs in error that while a complainant may have recovered a judgment at law against a corporation, yet a court of equity will refuse to lend its aid to enforce the judgment against stockholders and directors of the corporation where the evidence shows that the judgment creditor, while acting for the corporation in a fiduciary capacity, made false and fraudulent reports and wrongfully appropriated the corporation's money to its own use, for, it is asserted, in such a case the judgment creditor does not come into court with clean hands. The plaintiffs in error sought to support the charge largely by hearsay testimony the competency of which was properly challenged by the defendant in error. The conclusions reached upon the questions reviewed render it unnecessary to consider this contention.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Appellate Court reversed, circuit court affirmed.*