### LORRAINE CAB *v.* CITY OF DETROIT.

1. EVIDENCE—JUDICIAL NOTICE—TAXICAB BUSINESS.

    The Supreme Court takes judicial notice of the fact that taxicabs in a large city operate day and night and carry to all parts of the area persons who cannot utilize public transportation and that the protection of the public necessitates that a business of such a nature be regulated and controlled by public authorities.

2. STATUTES—CONSTRUCTION.

    The interpretation to be given a particular word in one section of an act is arrived at after due consideration is given to every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

3. CARRIERS—PASSENGERS—STATUTES—TAXICABS.

    State statute regulating the operation of common carriers of passengers for hire does not apply to operation of taxicabs in a home-rule city, since latter do not have time tables, fixed termini or routes or regular stations or stops (CL 1948, § 475.1 [g]; 1954 Administrative Code, §§ R 460.109, R 460.110, R 460.142).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  20 Am Jur, Evidence § 110.
[2]  50 Am Jur, Statutes § 363.
[3]  37 Am Jur, Motor Transportation §§ 4.1, 5.
[4]  42 Am Jur, Public Administrative Law § 78.
[5]  37 Am Jur, Municipal Corporations §§ 177, **178.**
[6]  14 Am Jur, Costs § 37.

4. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

The Supreme Court is not bound by an administrative body's interpretation of its own empowering act but does give it respectful consideration as a factor in arriving at the probable legislative intent.

5. MUNICIPAL CORPORATIONS—TAXICAB LICENSE FEE—PRESUMPTIONS —EVIDENCE.

Home-rule city's $100 license fee for taxicabs is presumed valid under record devoid of evidence supporting claim that such fee was excessive and unreasonable (Detroit Municipal Code [1945], ch 145, as amended).

6. COSTS—PUBLIC QUESTION—HOME-RULE CITY TAXICAB ORDINANCE.

No costs are allowed in suit to enjoin enforcement of home-rule city's taxicab license ordinance against taxicab operators who were duly licensed in suburbs, when driving patrons from points within the city to the suburbs (Detroit Municipal Code [1945], ch 145, as amended).

Appeal from Wayne; Kane (Edward T.), J., presiding. Submitted January 8, 1959. (Docket No. 31, Calendar No. 47,743.) Decided October 13, 1959. Rehearing denied November 24, 1959.

Bill by Lorraine Cab, a Michigan corporation, and 4 other parties plaintiff against the City of Detroit, a municipal corporation, and the Detroit Police Department to enjoin enforcement of ordinance regulating the operation of taxicabs. Decree for plaintiffs. Defendants appeal. Reversed.

*Rex Eames* and *Robert A. Sullivan (Sullivan, Elmer, Eames & Moody,* of counsel), for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and *Arthur L. Barkey* and *Lawrence E. Eaton,* Assistants Corporation Counsel, for defendants.

*Amicus Curiae:*

*Philip J. Neudeck,* for Checker Cab Company.

SMITH, J.  This is a suit to restrain the city of Detroit and the Detroit police department from enforcing an ordinance regulating the operation of taxicabs (Municipal Code, City of Detroit [1945], p 349, ch 145, as amended).  Plaintiffs, duly licensed in their home communities (Dearborn, Redford, Grosse Pointe Park, and Harper Woods), provide suburban taxicab service.  On numerous occasions, while driving patrons from points within Detroit to the suburbs, their drivers have been arrested for failure to comply with the licensing provisions of the Detroit ordinance.  Some drivers have applied for taxicab drivers' licenses and have been denied same.  No appeals have been taken from such denials.  It is agreed that the Detroit police department would now deny any application for such licenses, if applied for, on the ground that such drivers are not employed by a taxicab company licensed under Detroit's taxicab ordinance.

There is no doubt that Detroit's regulation of taxicabs is broad and comprehensive.  In order to obtain a license to provide taxicab service under the ordinance, one must satisfy the mayor that public convenience and necessity require the additional service proposed.  The driver must be of good moral character and the police commissioner must certify to his worth.  The cab must be equipped with a properly inspected and regulated taximeter.  Each licensee must name an agent for service of process.  Insurance against death or personal injury must be assumed, or security bond posted.  Drivers may not, without good reason, refuse a prospective customer for the service licensed.  We need not recite the applicable regulations in full.  We are impressed, as are appellants, with the need for regulation and control of the situation by the public authorities as we take judicial notice that the cabs operate day and night to proximate and remote parts of the area

carrying the innocent young, helpless old, strangers in the community, business travelers and others who, because of infirmity or for other reasons, cannot utilize public transportation. In fact, the legislative body, in the passage of the ordinance before us, has determined that such control by the municipality is necessary for the protection of the public. Is the city of Detroit without power to assert and enforce the prescribed control?

The plaintiffs say that it is. Although they do not question the general authority of Detroit to regulate the operation of taxicabs on its streets they urge that, by adoption of the motor carrier act, CL 1948, § 475.1 *et seq.*, as amended (Stat Ann § 22.531 *et seq.*, as amended), the legislature intended to supersede municipal regulation respecting operations not exempted thereunder. Their argument rests upon the premise that plaintiffs are "common motor carriers of passengers" within the meaning of the act. Thus it is pointed out that article 1, § 1, of the act provides, in part, as follows:

"(g) The term 'common motor carrier of passengers,' when used in this act, shall mean any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle from place to place over the public highways of this State persons who may choose to employ him for such purpose or for the purpose of transporting package express, excess baggage, newspapers and/or United States mail in the same vehicle used to transport passengers." (CL 1948, § 475.1[g], [Stat Ann § 22.531(g)]).*

---

* As to the "common motor carrier of property" the act employs the following definition:

"(f) The term 'common motor carrier of property,' when used in this act, shall mean any person who holds himself out to the public as being engaged in the business of a common carrier as at the common law, either directly or through any device or arrangement, including those who operate over fixed routes or between fixed termini, in the transportation by motor vehicle from place to place upon or

The court below concluded that plaintiffs were subject to regulation under the act, relying upon *North Star Line, Inc.,* v. *City of Grand Rapids,* 259 Mich 654, and entered the injunction prayed.

Despite the generality of the language used, it does not suffice, for a proper interpretation of the act, that we confine our attention to the definition above quoted. "The entire act must be read," as we held in *City of Grand Rapids* v. *Crocker,* 219 Mich 178, 182, 183, "and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."

Turning, then, to the entire act we find that its provisions require carriers under the act to "keep open to public inspection in each of its depots and offices, schedules showing all rates, fares and charges for transportation of passengers and property between different points on its route."[1] It is required also that the commission "regulate operating and time schedules so as to meet the needs of any community, and so as to insure adequate transportation service" to the area under consideration.[2] We find, in addition, that a common motor carrier of passengers shall have " the right to do a charter or special coach business in the transporting of persons for hire from place to place, provided such charter or special coach business shall originate at one of their termini or on, or adjacent to, the route regularly served by such common carrier."[3] The clear implication here (reinforced elsewhere in the act) is that a common car-

___

over the highways of this State, the property, or any property, or any class thereof of others who may choose to employ him." (CL 1948 § 475.1 [f], as amended by PA 1957, No 173 [Stat Ann 1957 Cum Supp § 22.531(f)]).

[1] CL 1948, § 476.6 (Stat Ann § 22.539).
[2] CL 1948, § 476.10 (Stat Ann § 22.543).
[3] CL 1948, § 476.5 (Stat Ann § 22.538).

rier of passengers shall operate between termini designated by the commission and shall provide regular service along designated routes. That it may, in addition to such service, engage in certain collateral operations does not suggest that authority might be conferred under a certificate to engage simply in those operations characteristic of taxicabs.

Viewing the act as a whole it would be difficult to frame a code less applicable to the operation of taxicabs. The above provisions relative to time tables for trips, to schedules of fares between "different points on the route," to depots, and to termini, all of which are completely inapplicable to the operation of taxicabs, are not merely appurtenant to the act but are of its very essence. And while we are not bound by any administrative body's interpretation of its own empowering act, we, in common with all modern courts, give it "respectful consideration" as one of the factors to be considered in arriving at the probable legislative intent. *Howard Pore, Inc.*, v. *State Commissioner of Revenue,* 322 Mich 49 (4 ALR 2d 1041). It is with this canon of construction in mind that we observe that the rules and regulations of the public service commission, also, are utterly inconsistent with the notion that the common carrier of passengers referred to in the act embraces the operation of taxicabs. Thus we find that:

"Every common carrier doing a passenger business shall file with the commission a time table showing the time of arrival and departure of its bus or buses at each regular station or stop, and such time table shall further show the number of trips to be made daily over each route or routes." (1954 Administrative Code, § R 460.109, p 5624.)

"No carrier shall allow any of its motor vehicles to be operated over any route other than that prescribed in its authorized certificate or permit with-

out the express consent of the commission, unless such authorized route be blocked or otherwise rendered temporarily impassable.   *   *   *

"When any route upon which a regulated carrier is entitled to travel   *   *   *   shall have been changed to include territory not theretofore served by such carrier, the carrier shall have no right to the new route unless and until the right to travel said new route shall have been granted to him on application to and order of the commission." (1954 Administrative Code, § R 460.110, p 5625.)

"No common carrier of passengers by motor vehicle authorized to perform seasonal operations over regular routes may do a charter or special coach business except during the period in which such regular route operations may be performed." (1954 Administrative Code, § R 460.142, p 5637.)

In opposition to the view of exclusion thus apparently imposed upon us by the language and provisions of the act itself, plaintiffs argue that the change from the language employed in prior legislation (referring to common carriers of persons or of property by motor vehicle by means of the limiting phrase, "over fixed routes or between fixed termini,"*) to the language presently employed in the definitional section hereinabove quoted indicates an intention to regulate all transportation by motor vehicle (excepting that specifically exempted), whether over fixed routes or between fixed termini or not. The act itself refutes the argument made. Although, as to common carriers of property, specific provision is made for operations over irregular routes and without adherence to a regular schedule,† there is no such corresponding provision with respect to the common carriers of passengers. We conclude that

---

* This phrase occurs in definitions in PA 1923, No 209, § 1, PA 1931, No 212 § 1, subd (i), PA 1931, No 312 § 1, subd (i).
† CL 1948, § 476.5 (Stat Ann § 22.538).

the legislature did not intend, by the slight change made, to assert regulatory powers of the sweeping nature asserted by appellees.

With respect to the validity of the $100 license fee imposed by the Detroit taxicab ordinance, the record is devoid of any evidence supporting appellees' claim that it is excessive and unreasonable. Its presumption of validity has not, therefore, been rebutted. See *Merrelli* v. *City of St. Clair Shores,* 355 Mich 575.

Under the views above expressed there is no need to discuss additional points argued by counsel.

Reversed. No costs, a public question.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

