DIXON ET AL. *v.* UNITED STATES.

No. 486. Argued March 30–31, 1965.—Decided May 3, 1965.

*Bernard E. Brandes* argued the cause for petitioners. With him on the briefs was *Sanford Saideman.*

*Frank I. Goodman* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Oberdorfer, Wayne G. Barnett* and *Joseph Kovner.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case involves the issue decided today in *United States* v. *Midland-Ross Corp.,* No. 628, *ante,* p. 54. Petitioners are members of a partnership which, during the tax year 1952, bought 33 short-term noninterest-bearing notes from issuers at discounts between $2\frac{3}{8}\%$ and $3\frac{3}{4}\%$ of face value. The notes had maturities ranging from 190 to 272 days. Their total face value was $43,050,000, and the total issue price was $42,222,357. The partnership sold 20 of the 33 notes before the end of the tax year but after having held them for more than

six months, realizing a gain of $494,528. The remaining 13 notes were disposed of in the next tax year. In its 1952 return the partnership reported the $494,528 gain as a long-term capital gain, and, although on the accrual basis, did not accrue any income on account of the 13 unsold notes. Petitioners' individual income tax returns reflected the same treatment for their respective distributive shares of the partnership income derived from the sale of the notes.

The Commissioner of Internal Revenue determined that the gain realized was taxable as ordinary income, and also that a portion of the original issue discount on the 13 unsold notes was earned and reportable as ordinary income for 1952.[1] Petitioners paid the resulting deficiencies, and in this suit for refund the United States prevailed in the District Court for the Southern District of New York, 224 F. Supp. 358, and in the Court of Appeals for the Second Circuit, 333 F. 2d 1016. We brought the case here on certiorari, 379 U. S. 943, to resolve a conflict with *United States* v. *Midland-Ross Corp., supra.* We affirm.

Our holding today in *Midland-Ross* that original issue discount is not entitled to capital gains treatment under the 1939 Internal Revenue Code requires that we affirm the result below unless an affirmance is precluded by an argument made here and not in *Midland-Ross.* The petitioners contend that in purchasing the notes they relied upon the Commissioner's published acquiescence in the Tax Court's decision in *Caulkins* v. *Commissioner,* 1 T. C.

---

[1] The petitioners concede the correctness of this treatment of the earned discount on the 13 unsold notes if original issue discount is reportable as ordinary income. Again, as in *Midland-Ross,* we do not reach or intimate any view upon the question whether an accrual-basis taxpayer is required to report discount earned before the final disposition of an obligation. See *United States* v. *Midland-Ross, ante,* p. 54, at 58, note 4.

656, aff'd 144 F. 2d 482, not withdrawn until the transaction was closed,[2] which acquiescence would require treating the gain realized as gain on the sale or exchange of a capital asset. Although petitioners concede that under § 7805 (b) of the Internal Revenue Code of 1954 the Commissioner has discretion to apply the withdrawal of the acquiescence retroactively, cf. *Automobile Club of Michigan* v. *Commissioner*, 353 U. S. 180, they contend that he abused his discretion in this case.

Section 7805 (b) provides:

> "Retroactivity of Regulations or Rulings.—The Secretary [of the Treasury] or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." [3]

In *Caulkins* the Tax Court allowed capital gains treatment of the full amount received by the taxpayer upon the retirement of an "Accumulative Installment Certificate," a debt security under which the lender made 10

---

[2] The Commissioner initially published a notification of nonacquiescence. See Rev. Rul. 11581, 1943 Cum. Bull. 1, 28. He published his acquiescence after the Court of Appeals affirmed the Tax Court. See Rev. Rul. 11907, 1944 Cum. Bull. 1, 5. The withdrawal of his acquiescence and the reinstatement of his initial nonacquiescence came in 1955, in 1955–1 Cum. Bull. 7, and Rev. Rul. 55–136, 1955–1 Cum. Bull. 213.

[3] Section 3791 (b) of the 1939 Code, 53 Stat. 467, was similarly worded except that the 1954 Act substituted "The Secretary or his delegate" for "The Secretary, or the Commissioner with the approval of the Secretary . . . ."

Whether the discount element of the gain from the notes here involved is a capital or an income item is governed by the relevant provisions of the 1939 Code, but the statute governing the retroactive application of the withdrawal of the acquiescence in 1955 is § 7805 (b) of the 1954 Code, and not § 3791 (b) of the 1939 Code. This makes no practical difference since the two provisions are identical apart from the variance mentioned above.

annual remittances to the borrower in the amount of $1,500 each in return for a payment of $20,000 in the tenth year. See *United States* v. *Midland-Ross Corp., supra,* at 63. This result gave capital gains treatment to an amount corresponding to but not in the form of original issue discount. The basis for this result was an interpretation of § 117 (f) of the Revenue Act of 1938, c. 289, 52 Stat. 447, which was re-enacted as § 117 (f) of the 1939 Code, and which provided that "amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness . . . with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." The Commissioner's 1955 withdrawal of his acquiescence in the Tax Court's decision in *Caulkins* was made retroactive as a general matter, but an exception was made for "amounts received upon redemption of Accumulative Installment Certificates issued by Investors Syndicate which were purchased during the period beginning December 25, 1944, the date acquiescence in the Caulkins case was announced and March 14, 1955, the date this Revenue Ruling is published . . . ." [4] The exception thus covered only the debt securities of the specific type involved in *Caulkins,* and issued by the particular issuer there involved.

In *Automobile Club of Michigan* v. *Commissioner, supra,* at 183–184, we held that the Commissioner is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions. [5]

---

[4] The withdrawal was published March 14, 1955. However, the exception was later limited to certificates acquired before December 31, 1954, Rev. Rul. 56–299, 1956–1 Cum. Bull. 603, apparently because § 1232 of the 1954 Code applies to obligations issued after that date.

[5] See also *Helvering* v. *Reynolds,* 313 U. S. 428; *Manhattan General Equipment Co.* v. *Commissioner,* 297 U. S. 129, 134–135.

He may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake. See *Manhattan General Equipment Co.* v. *Commissioner,* 297 U. S. 129. This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due.

But petitioners point to prefatory statements in the Internal Revenue Bulletins for 1952 and other years stating that Tax Court decisions acquiesced in "should be relied upon by officers and employees of the Bureau of Internal Revenue as precedents in the disposition of other cases." See, *e. g.,* 1952–1 Cum. Bull. IV. These are merely guidelines for Bureau personnel, however, and hardly help the petitioners here. The title pages of the same Revenue Bulletins give taxpayers explicit warning that rulings

> ". . . are for the information of taxpayers and their counsel as showing the trend of official opinion in . . . the Bureau of Internal Revenue; the rulings other than Treasury Decisions have none of the force or effect of Treasury Decisions and *do not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury.*" [6]   (Emphasis added.)

---

[6] Compare the current Internal Revenue Bulletins, wherein, with specific regard to acquiescences, it is stated:

"Actions of acquiescences in adverse decisions shall be relied on by Revenue officers and others concerned as conclusions of the Service only to the application of the law to the facts in the particular case. Caution should be exercised in extending the application of the

This admonition, together with the language of § 7805 (b)'s predecessor, § 3791 (b) of the 1939 Code, gave ample notice that the Commissioner's acquiescence in *Caulkins* was not immune from subsequent retroactive correction to eliminate a mistake of law.

Indeed, long before the tax year here in question this Court had made it clear that "The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law . . . but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." *Manhattan General Equipment Co.* v. *Commissioner, supra,* at 134.[7] There we held that the Commissioner could make retroactive a new regulation increasing tax liability beyond that provided for by the prior regulation where the superseding regulation corrected an erroneous interpretation of the statute.

"The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not,

---

decision to a similar case unless the facts and circumstances are substantially the same . . . ." *E. g.,* 1964–1 Cum. Bull. 3.

And the introduction to Revenue Rulings now expressly warns that "Except where otherwise indicated, published rulings and procedures apply retroactively." *Id.,* at 1. See also Rev. Proc. 62–28, 1962–2 Cum. Bull. 496, which states at 504:

"A ruling . . . may be revoked or modified at any time in the wise administration of the taxing statutes. . . . If a ruling is revoked or modified, the revocation or modification applies to all open years under the statutes, unless the Commissioner exercises the discretionary powers given to him under section 7805 (b) of the Code to limit the retroactive effect of the ruling."

[7] See also *Miller* v. *United States,* 294 U. S. 435, 439–440; *Lynch* v. *Tilden Produce Co.,* 265 U. S. 315, 320–322.

alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Id.*, at 135.

This reasoning applies with even greater force to the Commissioner's rulings and acquiescences.[8] Therefore the acquiescence in *Caulkins*, even assuming for the moment that it embodied the Commissioner's acceptance of the treatment petitioners urge upon us here, does not preclude the Commissioner from collecting the tax lawfully due under the statute.

We cannot agree with petitioners that *Automobile Club of Michigan* v. *Commissioner, supra,* supports a finding that the Commissioner abused his discretion in giving retroactive effect to the withdrawal of the acquiescence. In that case the Commissioner had issued general pronouncements according exempt status to all automobile clubs similarly situated, following letter rulings to that effect in favor of the taxpayer. The Commissioner then corrected his erroneous view and, in 1945, specifically revoked the taxpayer's exemption for 1943 and subsequent years. We rejected the taxpayer's claim that the Commissioner had abused the discretion given him by § 7805 (b)'s predecessor. The Commissioner's action had been forecast in a General Counsel Memorandum in 1943, and the corrected ruling had been applied to all automobile clubs for tax years back to 1943. 353 U. S., at 185–186.

Petitioners make two arguments based on *Automobile Club of Michigan*. First, they contend that the Commissioner's decision to apply his change of position retroactively to them is an abuse of discretion because, unlike

---

[8] The Commissioner's acquiescence in *Caulkins* and his withdrawal and reinstatement of nonacquiescence were stated in Revenue Rulings. Present practice appears to be to publish acquiescences and nonacquiescences without incorporating them in rulings. See, *e. g.*, 1964–1 Cum. Bull. 3.

the taxpayer in *Automobile Club*, they had no notice in the relevant tax year that the Commissioner was about to correct his mistake of law, and thus had purchased the discounted notes in express reliance upon the Commissioner's published acquiescence in *Caulkins*. Second, they argue that the Commissioner abused his discretion because the retroactive withdrawal of his acquiescence in *Caulkins* excepted certificates of the type involved in *Caulkins* if issued by the issuer there involved and purchased while the acquiescence was in effect; this is said to be an unreasonable and arbitrary classification since, petitioners assert, there is no significant difference between the excepted certificates and the notes that they had purchased.

Although we mentioned certain facts in support of our conclusion in *Automobile Club* that there had not been an abuse of discretion in that case, it does not follow that the absence of one or more of these facts in another case wherein a ruling or regulation is applied retroactively establishes an abuse of discretion. *Automobile Club* merely examined all the circumstances of the particular case to determine whether the Commissioner had there abused his discretion. 353 U. S., at 185. In the present case it cannot be said that the Commissioner abused his discretion in either of the respects urged by petitioners. The absence of notice does not prove an abuse, since, for the reasons we have stated, the petitioners were not justified in relying on the acquiescence as precluding correction of the underlying mistake of law and the retroactive application of the correct law to their case. Since no reliance was warranted, no notice was required.

Nor is there merit in the argument that the Commissioner abused his discretion in distinguishing Investors Syndicate Accumulative Installment Certificates from other debt securities, for we do not think the Commissioner's acquiescence in *Caulkins* was to be interpreted as his acceptance of the proposition that earned original

issue discount was entitled to capital gains treatment.[9] That interpretation might be properly put upon his acquiescence only if, *first,* the Tax Court in *Caulkins* squarely decided that any discount element in the amount realized by the taxpayer on the retirement of the certificate was not to be taxed as ordinary income but as capital gain, and, *second,* the decision of the Tax Court should be read as holding that the tax treatment of gain attributable to discount is the same on sales and retirements. But *Caulkins* embodies neither of these holdings. Therefore, when the Commissioner revoked his acquiescence in 1955 he was not repudiating his earlier acceptance of a decision that prescribed capital gains treatment for the earned original issue discount here involved. Consequently, his decision to except Accumulative Installment Certificates from the retroactive application of his nonacquiescence in *Caulkins* could not constitute an abuse of discretion of which the petitioners may complain.

As to item *first:* that the Tax Court in *Caulkins* did not squarely decide that the discount element in the amount realized by the taxpayer on the retirement of a debt security is to be taxed as a capital gain is apparent from its opinion. The Tax Court seemed to regard the only significant issue before it as whether the taxpayer's certificate of indebtedness was a "registered" certificate within

---

[9] Petitioners invoke the principle that "The Commissioner cannot tax one and not tax another without some rational basis for the difference. And so, assuming the correctness of the principle of 'equality,' it can be an independent ground of decision that the Commissioner has been inconsistent, without much concern for whether we should hold as an original matter that the position the Commissioner now seeks to sustain is wrong." *United States* v. *Kaiser,* 363 U. S. 299, 308 (concurring opinion). See also *Schuster* v. *Commissioner,* 312 F. 2d 311 (C. A. 9th Cir.); *Exchange Parts Co. of Fort Worth* v. *United States,* 150 Ct. Cl. 538, 279 F. 2d 251; *City Loan & Savings Co.* v. *United States,* 177 F. Supp. 843, aff'd 287 F. 2d 612 (C. A. 6th Cir.); *Brecklein* v. *Bookwalter,* 231 F. Supp. 404; *Connecticut Railway & Lighting Co.* v. *United States,* 142 F. Supp. 907.

the meaning of § 117 (f). There was no explicit consideration of whether any discount element in the amount realized by the taxpayer on the certificate was to be taxed as ordinary income or as capital gain. It is at best highly questionable, therefore, that by acquiescing in this decision the Commissioner conceded that § 117 (f) extended capital gains treatment to the discount element in the certificate of indebtedness.[10]

As to item *second:* the petitioners were not warranted in reading *Caulkins* as holding that the gain realized on a sale that is attributable to original issue discount is to be given the same tax treatment as gain so attributable realized on a retirement. The opinion deals only with, and rests squarely upon, § 117 (f), which is concerned with *retirements.* It is true that, in the case of securities in registered form or with coupons attached, that section was added by the Revenue Act of 1934, 48 Stat. 680, 714–715, to eliminate a difference in treatment between sales and retirements. See, *e. g., Fairbanks* v. *United States,* 306 U. S. 436; *Watson* v. *Commissioner,* 27 B. T. A. 463. But the opinion in *Caulkins* appears erroneously to carry forward a distinction and to give more favorable treatment to retirements. See *United States* v. *Midland-Ross Corp., supra,* at 63–66. Thus petitioners should not have read *Caulkins* as they did. Indeed the Tax Court has since distinguished *Caulkins* on the ground that it rested on the § 117 (f) language of

---

[10] The opinion of the Court of Appeals stated that § 117 (f) required that all gain realized upon retirement of an obligation to which the section applied be given capital gains treatment; that court's primary concern, however, was also with the question whether the section applied to the *Caulkins* certificates. Technically, the Commissioner's acquiescence in *Caulkins* was in the Tax Court decision and not in the decision of the Court of Appeals. As a general matter, the Commissioner still follows the practice of noting his acquiescence or nonacquiescence only in Tax Court decisions.

retirement and consequently was inapplicable to a sale. See *Paine* v. *Commissioner*, 23 T. C. 391, 401, rev'd on other grounds, 236 F. 2d 398 (C. A. 8th Cir.); *United States* v. *Midland-Ross Corp., supra,* at 65.

Furthermore, even on the assumption that *Caulkins* may be read as petitioners contend, petitioners had the burden of demonstrating that Accumulative Installment Certificates could not rationally be distinguished from other discounted securities. Cf. *American State Bank* v. *United States*, 279 F. 2d 585, 589–590 (C. A. 7th Cir.); *Schwartz* v. *Commissioner*, 40 T. C. 191, 193. But the record is devoid of any evidence of effort by petitioners to discharge this burden by showing the absence of any significant difference between the holders of Accumulative Installment Certificates and themselves. Indeed, the Commissioner might well have believed that however mistaken the view that his acquiescence in *Caulkins* was tantamount to an acceptance of capital gains treatment for original issue discount, the assumption that such treatment would be given the discount element of their debt securities was more understandable in the case of holders of Accumulative Installment Certificates—the same obligations as were involved in *Caulkins*—than in the case of other taxpayers. So thinking, the Commissioner might further have concluded that equitable considerations pointed to making an exception to the retroactive application of the nonacquiescence for the holders of these Certificates. It is not for us to pass upon the wisdom of any such distinction. It suffices that on this record we cannot say that the distinction was so devoid of rational basis that we must now overturn the Commissioner's judgment.

Insofar as petitioners' arguments question the policy of empowering the Commissioner to correct mistakes of law retroactively when a taxpayer acts to his detriment in reliance upon the Commissioner's acquiescence in an

erroneous Tax Court decision,[11] their arguments are more appropriately addressed to Congress. Congress has seen fit to allow the Commissioner to correct mistakes of law, and in § 7805 (b) has given him a large measure of discretion in determining when to apply his corrections retroactively. In the circumstances of this case we cannot say that this discretion was abused.

*Affirmed.*

---

[11] Cf. Griswold, A Summary of the Regulations Problem, 54 Harv. L. Rev. 398, 411–419 (1941).