TOWN AND COUNTRY DODGE, INCORPORATED v
DEPARTMENT OF TREASURY

STAR LINCOLN-MERCURY, INCORPORATED v DEPARTMENT
OF TREASURY

Docket Nos. 58068, 58069. Submitted March 2, 1982, at Lansing.—
Decided August 24, 1982. Leave to appeal applied for.

Petitioners Town and Country Dodge, Incorporated, and Star
Lincoln-Mercury, Incorporated, are operators of new car dealer-
ships who were assessed for single business tax deficiencies.
Some of the sales made by the petitioners to their customers
involve dealer financing. Customers who engage in financing
through the petitioners execute notes to the petitioners and
incur the obligation to pay an amount in excess thereof which
represents the cost of financing. The petitioners assign the
notes to financial institutions at a price which is greater than
the purchase price of the automobile but less than the full face
value of the note. The customers then pay the financial institu-
tion the full face value of the note in monthly installments.
From time to time, the financial institution rebates to the
dealer a small portion of the monthly payment. The small
portion rebated is the amount by which the full face value of
the note is discounted. The Department of Treasury character-
izes this amount as a rebate or finder's fee which constitutes
business income and is includable in computing the dealer's tax
base for single business tax purposes. The petitioners contend
that the rebates represent a small portion of the interest on the
notes and are thus deductible from their tax base for purposes
of the Single Business Tax Act. The petitioners each appealed

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 8-10] 71 Am Jur 2d, State and Local Taxation §§ 447, 451, 452,
483, 520.
Constitutionality, construction, and application of provisions of
state tax law for conformity with federal income tax law or
administrative and judicial interpretation. 42 ALR2d 797.
[2, 7] 45 Am Jur 2d, Interest and Usury § 1.
[4] 71 Am Jur 2d, State and Local Taxation §§ 451, 452.
[5] 2 Am Jur 2d, Administrative Law § 656.
[6] 5 Am Jur 2d, Appeal and Error § 545.

the final decisions of the Department of Treasury to the Michigan Tax Tribunal. The Tax Tribunal ruled that the amount rebated was a small portion of the finance charge which it defined as "the consideration over and above the cost of the care, *i.e.,* the cost of credit". The tribunal granted summary judgments to the Department of Treasury finding that the terms "finance charge" and "interest" are mutually exclusive. The petitioners each appealed. The Court of Appeals consolidated the cases. *Held:*

Basically, rebates made by lending institutions to automobile dealers are payments for labor and services rendered. As such, the payments are business income, properly included in the tax base under the statute. Because the payments made by the lending financial institutions to the dealers are basically payments for performing the paper work and bringing the notes to the lending institutions, they are in the nature of business income includable in the tax base. Although paid out of funds which the lending institution received as income, the payment itself is for services rendered. During the time that the single business tax has been in existence, sums paid to automobile dealers by lending institutions who have loaned money to purchasers on terms similar to those here, have always been treated as a legitimate finder's fee or a payment for services constituting business income and, although appellate tribunals are not bound by an administrative body's interpretation of statutes falling within its powers to administer, administrative interpretation given a statute over a period of years is entitled to great weight and should not be overruled without the most cogent of reasons.

Affirmed.

M. F. CAVANAGH, P.J., dissented. He believed that the Tax Tribunal committed a clear error of law and would reverse its determination. In enacting the Single Business Tax Act the Legislature desired to establish a neutral tax system with each business paying taxes in proportion to its economic size without interference from the nature of the tax in internal business decisions. To accept the respondent's contention would defeat that purpose. Businesses would be required to either hold their commercial paper to avoid payment of the tax and thereby forego the opportunity to recapitalize their investments or, if their operations were too small to enable them to hold their own paper, they would be required to discount the paper and be subjected to harsher tax treatment than if they were engaged in a larger operation. Therefore, to avoid that result, the

petitioners should be entitled to an interest deduction regardless of whether they decide to hold their paper or to discount it.

OPINION OF THE COURT

1. TAXATION — SINGLE BUSINESS TAX — INCOME.

Business income for purposes of the Single Business Tax Act means federal taxable income, except that for a person .other than a corporation it means that part of federal taxable income derived from business activity; for a partnership, business income includes payments and items of income and expense which are attributable to business activity of the partnership and separately reported to the partners; tax base means business income, before apportionment or allocation; a taxpayer may in determining tax base deduct all interest to the extent that such interest was included in arriving at the taxpayer's federal taxable income (MCL 208.3[3], 208.9[1], 208.9[7][b]; MSA 7.558[3], 7.558[9][1], 7.558[9][7][b]).

2. INTEREST — DEFINITIONS.

Interest is the compensation allowed by law or fixed by the parties for the use or forbearance of money, or a charge for the loan or forbearance of money; in short, interest is a sum paid for the use of money or for the delay in the payment of money.

3. TAXATION — SINGLE BUSINESS TAX.

The single business tax is designed to tax what a business has added to the economy, as distinguished from the income tax which taxes that which is derived from the economy; the single business tax is the antithesis of the income tax which adds interest to the tax base but allows deductions for labor and services.

4. TAXATION — SINGLE BUSINESS TAX.

The Single Business Tax Act does not define the term "interest"; however, the act provides that a term used in the act and not defined differently should have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required (MCL 208.2; MSA 7.558[2]).

5. ADMINISTRATIVE LAW — JUDICIAL CONSTRUCTION — APPEAL.

An administrative body's interpretation of a statute falling within its powers to administer is entitled to great weight and should not be overruled by a court without the most cogent of reasons.

6. APPEAL — APPELLATE COURTS.

> The function of an appellate court is restricted to the test of questions which, in the court below, have been raised and saved for review, and a claim not so raised should not be considered by an appellate court, even if the claim may be of some merit and even if it is a constitutional question.

DISSENT BY M. F. CAVANAGH, P.J.

7. INTEREST — SINGLE BUSINESS TAX.

> *The term "interest" has been defined by the United States Supreme Court as compensation for the use or forbearance of money paid with respect to a genuine indebtedness.*

8. TAXATION — SINGLE BUSINESS TAX.

> *The Single Business Tax Act is designed to tax what a business has added to the economy, in contrast to an income tax which taxes what one has derived from the economy.*

9. TAXATION — SINGLE BUSINESS TAX.

> *The single business tax is in essence a value-added tax; it taxes the use of capital, and because dividends, interest, and royalties are paid for the use of capital, the payer of the interest, not the receiver, is taxed.*

10. TAXATION — SINGLE BUSINESS TAX.

> *The Legislature in enacting the Single Business Tax Act desired to establish a neutral tax system with each business paying taxes in proportion to its economic size without interference from the nature of the tax in internal business decisions.*

*Lawrence J. Stockler,* for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for respondent.

Before: M. F. CAVANAGH, P.J., and ALLEN and E. C. PENZIEN,* JJ.

ALLEN, J. This consolidated appeal involves separate taxpayers, each of whom appeal by right from an order of the Tax Tribunal granting sum-

* Circuit judge, sitting on the Court of Appeals by assignment.

mary judgment in favor of respondent Michigan Department of Treasury. In docket no. 58068, Town and Country Dodge was found liable for a single business tax deficiency of $3,956.10 for the 1976 and 1977 tax years. In docket no. 58069, Star Lincoln-Mercury was found liable for a single business tax deficiency of $14,849.11 for the 1976-1979 inclusive tax years. Except for the amount of liability and the tax years involved, the facts and issues of each appeal are identical.

Petitioners are operators of new car dealerships who challenge assessments made by the respondent pursuant to the Single Business Tax Act, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* The controversy involves the meaning of the term "interest", as that term is used in § 9 of the act, MCL 208.9; MSA 7.558(9). Some of the sales made by the petitioners to their customers involve dealer financing. Customers who engage in financing through the petitioners execute notes to the petitioners and incur the obligation to pay an amount in excess thereof which represents the cost of financing (finance charge). The petitioners assign the notes to financial institutions at a price which is greater than the purchase price of the automobile but less than the full face value of the note (*i.e.,* at a discount).

The customers then pay the financial institution the full face value of the note in monthly installments, usually over a 48-month period. From time to time, the financial institution rebates to the dealer a small portion of the monthly payment. The small portion rebated is the amount by which the full face value of the note is discounted. It is this small portion rebated which is the subject of dispute in the instant case. The Department of Treasury characterizes this amount as a "rebate" or "finder's fee" which constitutes business income

and is includable in computing the dealer's tax base for single business tax purposes. On the other hand, petitioners argue that the rebates represent a small portion of the interest on the notes and thus are deductible from their tax base pursuant to § 9 of the act.

The Tax Tribunal ruled that the amount rebated was a small portion of the "finance charge" which the tribunal defined as "the consideration over and above the cost of the car, *i.e.,* the cost of credit". According to the tribunal, the term "finance charge" and "interest" are mutually exclusive terms of art:

> "Michigan case law further supports the distinction between interest and a finance charge. 'Interest' has been defined as 'the compensation allowed by law or fixed by the parties for the use or forbearance of money, or as damages for its detention', *Marion v Detroit,* 284 Mich 476; 280 NW 26 (1938); 'as a charge for the loan or forbearance of money * * *', *Balch v Detroit Trust Co,* 312 Mich 146; 20 NW2d 138 (1945); and as stated in *Coon v Schlimme Dairy Co,* 294 Mich 51; 292 NW 560 (1940), 'interest is pay for the use of money'. Interest therefore is a charge which can be added when money (in some form or another) is loaned from one party to another.
>
> "A finance charge or time-price differential is the difference in total amount paid for goods or services when and if the seller is willing to be paid over time rather than immediately (cash sale).
>
> "When the petitioner discounts the paper to various assignees, what it receives back is simply a portion of that finance charge."

1975 PA 228, § 3(3), as amended (Michigan Single Business Tax Act, hereafter "SBT"), being MCL 208.3(3); MSA 7.558(3), defines "business income" as follows:

" 'Business income' means federal taxable income, except that for a person other than a corporation it means that part of federal taxable income derived from business activity. For a partnership, business income includes payments and items of income and expense which are attributable to business activity of the partnership and separately reported to the partners."

Section 9(1) of the statute, MCL 208.9(1); MSA 7.558(9)(1), defines the term "tax base":

" 'Tax base' means business income, before apportionment, or allocation as provided in chapter 3, even if zero or negative, subject to the adjustments in subsections (2) to (9)."

Pursuant to § 9, subsection (7)(b), MCL 208.9(7)(b); MSA 7.558(9)(7)(b), a taxpayer may in determining "tax base" deduct all interest to the extent that such interest was included in arriving at the taxpayer's federal taxable income.

Thus, the sole issue involved in the proceedings before the Michigan Tax Tribunal and the issue now before this Court on appeal is whether the amount of payment made by the financial institution to the dealer was interest income excludable from the petitioners' single business tax base, SBT § 9(7)(b), or whether the income was to be properly considered as business income includable in such tax base, SBT § 9(1). Resolution of this issue depends upon a clear understanding of the nature of the transaction involved.

A hypothetical example of a dealer financed sale (also known as indirect financing) will be helpful. Assume that buyer (B) purchases a car from dealer (D) for $7,301 paying in cash or trade-in $1,501, leaving a balance due of $5,800 to be paid over a 48-month period at 14.35% interest. The total finance charge ($1,855.04) plus the balance due on

the car ($5,800) is $7,655.04. B signs a note for $7,655.04 spread over 48 monthly installments of $159.48, agrees to D's assignment of the note to a financial institution (FI) and that he (B) will repay the note in 48 monthly payments of $159.48 to FI. D then takes the note to FI which discounts the finance charge of $1,855.04 by one-half of one percent, *viz.:* $9.48. FI issues a check to D for $5,800 and B makes 48 monthly payments of $159.48 each to FI. From time to time, usually quarterly, FI rebates to D a portion of the $9.48. While the amount returned on a single transaction is small, the combined amount of rebates on a number of transactions can be substantial.[1]

It is the treatment of the $9.48 for single business tax purposes which is the subject matter of the instant dispute. Petitioners contend that since the payment by B to FI is interest, so too, a rebate of a part thereof by FI to D is interest. The Attorney General, representing respondent Department of Treasury, argues that assuming, *arguendo,* the finance charge paid by D to FI is interest, the rebate of a portion of such charge by FI to D is not interest income excludable from D's single business tax base under § 9(7)(b). We agree with the Attorney General.

Under Michigan law, interest has been variously defined as "the compensation allowed by law or fixed by the parties for the use or forbearance of money", *Marion v Detroit,* 284 Mich 476, 484; 280 NW 26 (1938), or "a charge for the loan or forbearance of money", *Balch v Detroit Trust Co,* 312 Mich 146, 152; 20 NW2d 138 (1945). In short, it is a sum "paid for the use of money", *Coon v*

---

[1] The total rebate of $9.48 when spread over 48 payments amounts to only some $.17 per payment. However, the amount is greater in the initial years of the repayment schedule and gradually declines as the note is paid.

*Schlimme Dairy Co,* 294 Mich 51, 56; 292 NW 560 (1940), or "for the delay in the payment of money", *Drennan v Herzog,* 56 Mich 467, 469; 23 NW 170 (1885). Under any of the foregoing definitions, the sums rebated to petitioner dealers were not a repayment for the use of or the loan of money. The dealers did not advance money to the buyers. It was the financial institution which made the loan. Furthermore, in case of default in payment by the buyer, the financial institution had no recourse against the dealer.

The Attorney General argues, and we agree, that the sums rebated to D by FI are payments for the services performed by D in filling out the papers and bringing the business to a named financial institution. It is in the nature of a finder's fee. In common parlance it is a "kickback", though we dislike that term because it implies something illegal. There is nothing illegal in discounting a note as a reward or incentive for supplying the business. It is a well recognized legitimate business practice. Basically, rebates made by lending institutions to automobile dealers are payments for labor and services rendered. As such, the payments are business income, properly included in the tax base under § 9(1) of the statute.

The single business tax is designed to tax what a business has added to the economy, as distinguished from the income tax which taxes that which is derived from the economy. *Stockler v Dep't of Treasury,* 75 Mich App 640; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977), *app dis* 435 US 963 (1978). In that respect, it is the antithesis of the income tax which adds interest to the tax base but allows deductions for labor and services. See *Constitutionality of the Michigan Single Business Tax,* 25 Wayne L Rev 1309 (1979). Because

the payments made by the lending financial institutions to the dealers in the instant case are basically payments for performing the paper work and bringing the notes to the lending institutions, they are in the nature of business income includable under § 9(1) in the tax base. Though paid out of funds which the lending institution received as income, the payment itself is for services rendered. To hold otherwise elevates form over the realities of the marketplace.

Contributing to the problem in the instant case is the breadth of the Tax Tribunal's opinion. According to the Tax Tribunal, the total amount of the note over and above the cost of the automobile is a finance charge or time-price differential, *no part* of which is interest. We think the Tax Tribunal painted with too broad a brush. As noted in the hypothetical example cited earlier, payments made by the buyer to the lending institution are payments for the buyer's use of money. As such, they certainly are, if not interest, at least in the nature of interest *to the lending institution.* But the payment by the buyer of interest to the lending institution is not dispositive of whether the rebate by the lending institution to the dealer of a portion of said payment is interest income. Instead, it is a payment for labor and services rendered which add to the economy. As such, it is not excludable under § 9(7)(b) of the statute.

The Single Business Tax Act does not define the term "interest". However, § 2(2) of the statute, MCL 208.2; MSA 7.558(2), provides that a term used in the act "and not defined differently, shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly re-

quired". In *Deputy v du Pont,* 308 US 488; 60 S Ct 363; 84 L Ed 416 (1940), the United States Supreme Court defined interest for federal income tax purposes in language virtually identical to the definition of interest found in *Marion v Detroit, supra,* and other Michigan cases cited earlier in this opinion.

"In *Old Colony R Co v Comm'r of Internal Revenue,* 284 US 552; 52 S Ct 211; 76 L Ed 484 [1932], this Court had before it the meaning of the word 'interest' as used in the comparable provision of the [November 23] 1921 Act (42 Stat 227). It said, p 560 '* * * as respects "interest", the usual import of the term is *the amount which one has contracted to pay for the use of borrowed money.'* It there rejected the contention that it meant 'effective interest' within the theory of accounting or that 'Congress used the word having in mind any concept other than the usual, ordinary and everyday meaning of the term.' p 561. It refused to assume that the Congress used the term with reference to 'some esoteric concept derived from subtle and theoretic analysis.' p 561.

"We likewise refuse to make that assumption here. It is not enough, as urged by respondent, that 'interest' or 'indebtedness' in their original classical context may have permitted this broader meaning. We are dealing with the context of a revenue act and words which have today a well-known meaning. In the business world 'interest on indebtedness' means *compensation for the use or forbearance of money.* In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense. In sum, we cannot sacrifice the 'plain, obvious and rational meaning' of the statute even for 'the exigency of a hard case.'" 308 US 497-498. (Emphasis added; footnotes omitted.)

We repeat. Petitioner automobile dealers did not loan the money in the situation before us. The loan was made by the various lending institutions who were repaid by the purchasers. Thus, under

federal law the rebates were not for repayment of loans or use of money by the dealers. Instead, the rebates were for services performed.

Finally, we observe that the single business tax became effective January 1, 1976. During the six years it has been in existence, sums paid to automobile dealers by lending institutions who have loaned money to purchasers on terms similar to those in the instant case have always been treated as a legitimate finder's fee or a payment for services constituting business income under § 9(1) of the statute. Although appellate tribunals are not bound by an administrative body's interpretation of statutes falling within its powers to administer, *Lorraine Cab v Detroit,* 357 Mich 379, 384; 98 NW2d 607 (1959), administrative interpretation given a statute over a period of years is entitled to great weight, *Wyandotte Bank v Banking Comm'r,* 347 Mich 33, 48; 78 NW2d 612 (1956), and should not be overruled without the most cogent of reasons. *Raven v Wayne County Bd of Comm'rs,* 52 Mich App 196, 200; 217 NW2d 116 (1974).

Petitioners raise several additional issues all of which pertain to the constitutionality of the single business tax.[2] None of those issues were raised in the Tax Tribunal. As a general rule, failure to raise an issue below precludes appellate review even if the claim may be of merit. *Oakland County v Detroit,* 81 Mich App 308, 313; 265 NW2d 130 (1978), *lv den* 403 Mich 810 (1978); *Penner v Seaway Hospital,* 102 Mich App 697, 706; 302 NW2d 285 (1981). The rationale for the rule is to give this Court the benefit of the lower court's

---

[2] The additional issues are: (1) does the SBT act violate the United States Constitution by levying a tax on the privilege of engaging in business; (2) does the SBT act impose double taxation on income in violation of Const 1963, art 9, § 3; and (3) does the SBT act constitute a graduated income tax in violation of Const 1963, art 9, § 7?

input. Recently, in *Eyde v Lansing Twp,* 105 Mich App 370, 376; 306 NW2d 797 (1981), this Court held that the Tax Tribunal had the authority to pass upon constitutional issues. Accordingly, we decline to consider the constitutional issues raised.

Affirmed. No costs, a question of public importance being involved.

E. C. PENZIEN, J., concurred.

M. F. CAVANAGH, P.J. *(dissenting).* I must dissent from the holding of the majority which affirms the Tax Tribunal's determination that the term "finance charge" and the term "interest" are mutually exclusive terms of art.

The term "interest" is not defined in the SBTA. However, § 2 of the act provides in part the following:

"(2) A term used in this act and not defined differently shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes." MCL 208.2(2); MSA 7.558(2)(2).

The Tax Tribunal relied on the definition of "interest" in 26 USC 6049(b):

"(b) *Interest defined.*—
"*(1) General rule.*—For purposes of subsections (a)(1) and (2), the term 'interest' means—
"(A) interest on evidences of indebtedness (including bonds, debentures, notes, and certificates) issued by a corporation in registered form, and, to the extent provided in regulations prescribed by the Secretary, inter-

est on other evidences of indebtedness issued by a corporation of a type offered by corporations to the public;

"(B) interest on deposits with persons carrying on the banking business;

"(C) amounts (whether or not designated as interest) paid by a mutual savings bank, savings and loan association, building and loan association, cooperative bank, homestead association, credit union, or similar organization, in respect of deposits, investment certificates, or withdrawable or repurchasable shares;

"(D) interest on amounts held by an insurance company under an agreement to pay interest thereon; and

"(E) interest on deposits with stockbrokers and dealers in securities."

I am persuaded that reliance on the above-quoted definition for purposes of defining interest under the SBTA is improper. Section 6049 of the Internal Revenue Code requires any individual who makes "payments of interest" to make a return naming the person to whom the interest was paid. The statute specifically provides that the definition of interest contained therein only operates for purposes of applying that section. Since the definition contained in § 6049(b) only applies for purposes of determining the applicability of the reporting requirements of that section and with regard to interest expense, as opposed to interest income, the term "interest" as used therein is not used in a context comparable to the term "interest" as used in § 9 of the SBTA. MCL 208.9; MSA 7.558(9).

Because § 9 of the SBTA permits a deduction of earned interest only to the extent that the taxpayer included that amount in arriving at his or her federal taxable income, it is necessary to determine whether the amount of the "finance charge" would have been considered "interest" for

purposes of determining the petitioner's gross income for federal income tax purposes had the petitioners not discounted the notes. The Internal Revenue Code, 26 USC 61, provides in part the following:

"(a) *General definition.* Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

> *   *   *

"(4) Interest;"

The term "interest" is not defined in § 61. However, the Supreme Court has defined it as compensation for the use or forbearance of money paid with respect to a genuine indebtedness. *Deputy v du Pont,* 308 US 488, 498; 60 S Ct 363; 84 L Ed 416 (1940). In determining whether amounts received by the taxpayers constituted interest within the meaning of § 61, the federal courts have generally looked to the substance of the transaction, rather than to its form. See *Berry v Comm'r of Internal Revenue,* 372 F2d 476 (CA 6, 1967), *cert den* 389 US 834; 88 S Ct 38; 19 L Ed 2d 94 (1967).

The transfer in *Berry, supra,* occurred prior to the enactment of the chapter in the Internal Revenue Code relating to installment sales, 26 USC 483, which provides:

"(a) Amount constituting interest. For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applied which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

"(b) Total unstated interest. For purposes of this

section, the term 'total unstated interest' means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

"(1) the sum of the payments to which this section applies which are due under the contract, over

"(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

"For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations perceived by the Secretary. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

"(C) *Payments to which section applies*—

"(1) *In general.*—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

"(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

"(B) under which, using a rate provided by regulations prescribed by the Secretary for purposes of this subparagraph, there is total unstated interest."

It is apparent from the foregoing that to the full extent the finance charge exceeds the cash purchase price of the automobile, it is interest income for federal income tax purposes. In substance, financing by the dealer is a loan of money to the purchaser to enable him to purchase an automobile. The dealer's capital is tied up to the same extent that it would be if it had actually made a cash advance to its customer. Therefore, the

amount of the finance charge is compensation for the use or forbearance of money. *Deputy v du Pont, supra.* Consequently, it appears that the finance charge that petitioners include in their installment contract is "interest", as that term is used in the Internal Revenue Code. 26 USC 61. Since the term "interest" as used in § 61 of the Internal Revenue Code appears to be used in a context comparable to the use of that term in § 9(7) of the SBTA, the finance charge received by dealers who directly finance the purchase of automobiles by their customers should be determined to be interest within the meaning of § 9(7).

This conclusion is supported by the SBTA itself. The SBTA is designed to tax what a business has added to the economy, in contrast to an income tax which taxes what one has derived from the economy. *Stockler v Dep't of Treasury,* 75 Mich App 640; 255 NW2d 718 (1977), *lv den* 402 Mich 802, *app dis* 435 US 963; 98 S Ct 1598; 56 L Ed 2d 54 (1978). Therefore, the act requires that in computing its tax base for SBTA purposes, the taxpayer must add to his federal taxable income the value of the labor it employs, § 9(5), and the value of the capital it uses, § 9(3)(4). The SBTA is in essence a value-added tax, *Stockler, supra.* It taxes the use of capital, and, because dividends, interest, and royalties are paid for the use of capital, the *payer of the interest, not the receiver, is taxed.* Consequently, while § 9(4) requires the inclusion of expenses related to those items in computing an individual's tax base, § 9(7) requires that income relating to receipt of the same be excluded. When an automobile dealer provides for the financing of an automobile, it is the customer who is the user of the capital, not the dealer. To tax the dealer for the amount of the finance charge would be incon-

sistent with the concept of the SBTA as a value-added tax. It would constitute a tax on the value of what the owner has derived from the economy, *i.e.,* an income tax, rather than a tax on what has been added to the economy. *Stockler, supra.*

Respondent argues that even if finance charges received by the dealers constitute interest, when the commercial paper is discounted to a financial institution the amount received in excess of the principal amount of the note is in the nature of a finder's fee or rebate, rather than interest. Respondent cites no authority in support of its position.

As noted earlier, the SBTA requires the court to examine the Internal Revenue Code in determining the meaning of the terms contained therein. In *Dixon v United States,* 333 F2d 1016 (CA 2, 1964), *aff'd* 381 US 68; 85 S Ct 1301; 14 L Ed 2d 223 (1965), the Court affirmed the proposition that gains realized from the sale of commercial paper are treated as interest income for federal income tax purposes. Although not entirely clear, it appears that the respondent is arguing that even if treated as interest for federal tax purposes, the amount of the discount which exceeds the purchase price of the automobile should not be treated as interest for SBTA purposes because of the ongoing and continuous nature of the relationship between the petitioners and the financial institutions. It argues that the petitioners are not engaged in financing at all. In reality they are merely acting as agents for the financial institutions. It is argued that the proceeds realized by the petitioners, although in the form of discounts on the transfer of commercial paper, are in reality a finder's fee or rebate to the petitioners for procuring business for the institutions.

I would first note that if I were to accept the

respondent's contention, it would be necessary to remand the case to the Tax Tribunal for further findings of fact. The nature and the extent of the relationship between the petitioners and the lending institutions is not at all clear from the record. However, a remand is not necessary because I would reject the respondent's contention. If we were to hold that businesses which are able to hold their commercial paper are not subject to SBTA taxation on the finance charges received on the paper while at the same time holding that businesses which discount their paper are required to include the finance charge portion of the amount thus received in their tax base in computing SBTA liability, a substantial competitive advantage to large businesses would result.

The legislative history of the SBTA indicates that the Legislature did not intend such a result. The predecessors of the SBTA were the Michigan Business Activities Tax Act, 1953 PA 150 (repealed 1967), and the Income Tax Act of 1967, MCL 206.1 *et seq.;* MSA 7.557(101) *et seq.* As they related to the taxation of business, both of those tax statutes resulted in special treatment being given to certain businesses and resulted in a poor business climate. The SBTA was intended to avoid the problems that had surrounded its predecessors. See *Constitutionality of the Michigan Single Business Tax,* 25 Wayne L Rev 1309, 1311 (1979). The Legislature desired to establish a neutral tax system with each business paying taxes in proportion to its economic size without interference from the nature of the tax in internal business decisions. See *The Economic Logic of the Single Business Tax,* 22 Wayne L Rev 1017, 1021 (1976). To accept the respondent's contention would defeat that purpose. Businesses would be required either to hold

their commercial paper to avoid payment of the tax and thereby forego the opportunity to recapitalize their investments, or, if their operations were too small to enable them to hold their own paper, they would be required to discount the paper and be subjected to harsher tax treatment than if they were engaged in a larger operation. Therefore, to avoid that result petitioners should be entitled to an interest deduction pursuant to § 9 of the SBTA regardless of whether they decide to hold their paper or to discount it.

I am in agreement with the majority's declination to address the other issues raised. However, for the reasons stated, I would hold that the Tax Tribunal committed a clear error of law and would reverse.