**LAURA FARMERS COOPERATIVE ELEVATOR CO., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. P–2880.**

United States District Court
S. D. Illinois, N. D.

Oct. 10, 1967.

Warren A. Heindl and Harry Meloy, Chicago, Ill., F. Louis Behrends, Peoria, Ill., for plaintiff.

Richard E. Eagleton, U. S. Atty., Peoria, Ill., David A. Wilson, Jr., Chief, Refund Trial Section No. 1, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

Plaintiff, Laura Farmers Cooperative Elevator Company, instituted this suit to recover certain income tax payments made for its fiscal years ended May 31, 1962 and May 31, 1963. The facts giving rise to the controversy are stipulated. The cause is now before the court upon cross-motions by the plaintiff and defendant for summary judgment.

Plaintiff was incorporated in the early 1920's, under the Illinois statutes, as a business corporation for the purpose of marketing grain of its shareholder members and others and for the further purpose of selling farm supplies to its patrons. Its activities were conducted on a partially cooperative basis.

As of March 31, 1961, plaintiff had outstanding 349 shares of common stock, having a par value of $100 per share, for which plaintiff had received a cash consideration of $34,900 upon the issuance of such stock. The earned surplus of the corporation was then $187,652.18, no part of which had been allocated to patrons as patronage refunds. No dividends chargeable to that surplus had been declared.

On July 24, 1961, pursuant to the consent of its shareholders, plaintiff was reorganized as a cooperative under the provisions of the Illinois Agricultural Cooperative Act, Ill.Rev.Stat.1959, Ch. 32, § 440 et seq. Under the reorganization plan adopted, plaintiff agreed to exchange one share of first preferred, $100 par, five percent, cumulative dividend stock, and twenty shares of second preferred, $25 par, two percent noncumula-

tive dividend stock for each share of its old common stock.

During its fiscal year ending May 31, 1962, 329 shares of the old common stock were exchanged for 329 shares of the first preferred stock and 6580 shares of the second preferred stock. In the same fiscal year, plaintiff sold an additional 63 shares of first preferred stock at the par value of $100 per share. During the same period, one share of first preferred stock and 40 shares of second preferred stock were turned in to the plaintiff and applied at par value to accounts receivable.

During the fiscal year ending May 31, 1963, plaintiff issued 11 additional shares of the first preferred stock and 220 shares of the second preferred stock in exchange for 11 shares of the original common stock. During the same period of time, plaintiff sold 21 shares of first preferred stock at par value and redeemed 3 shares thereof.

The plan of reorganization contemplated the capitalization of the earned surplus account of the corporation, and to issue therefor the second preferred shares in an amount equivalent to the shareholders' equity in that portion of the assets of the corporation. Prior to May 31, 1962, the sum of $164,500 was transferred from earned surplus to capital, that sum being the par value of the 6,580 second preferred shares issued. In the year ending May 31, 1963, an additional $5,500 was transferred from the earned surplus account to capital on the same basis. The aggregate result of those transactions was to reduce the earned surplus account standing on the plaintiff's books to $17,652.18.

On August 28, 1962, plaintiff filed an application with the District Director of Internal Revenue claiming an exemption from taxation as a farmers' cooperative, pursuant to the provisions of Section 521 of the Internal Revenue Code of 1954, as amended, 26 U.S.C.A. § 521. On September 28, 1962, the District Director denied the exemption.

Plaintiff filed income tax returns for the two taxable years as a regular business corporation. In the fiscal year ending in 1962, plaintiff paid tax, so computed, in the amount of $3,142. The tax computed on the same basis, and paid for the fiscal year ending in 1963, was $1,848.52.

During the same period of time, plaintiff paid dividends on its first and second preferred stock in the amount of $5,225 for the year ending May 31, 1962, and $5,645 for the year ending May 31, 1963.

Thereafter, plaintiff filed a claim for a refund for each of the taxable years, based upon the theory that plaintiff was qualified for exempt status under Section 521 of the Code, and was, therefore, entitled to a deduction for the amount of dividends paid on its capital stock. The District Director disallowed both claims, rejecting plaintiff's contention that it was entitled to an exempt status under Section 521.

The parties have stipulated that plaintiff has satisfied all conditions of Section 521, with the exception of the 8 percent limitation placed by the Code on dividends which may be paid to shareholders. The plaintiff's claim was disallowed by the District Director on the theory that the dividends paid on its preferred stock for each of the taxable years in question was in excess of the 8 percent allowable return on the investment of plaintiff's shareholders. The District Director's view was that the cash consideration for the issuance of the new stock issues was limited to the $100 per share which the shareholders had originally paid for their old common stock. He held that the 20 shares of second preferred stock issued for each share of common stock exchanged was issued by plaintiff without any consideration moving to the corporation from the shareholder.

Upon that basis, the District Director determined that the consideration for all preferred stock outstanding, as of the end of the fiscal year ending May 31, 1962, was $39,100, and that the consideration for all preferred stock outstanding at the end of the fiscal year ending May 31, 1963, was the sum of $42,000. In each instance, the figure is the aggregate of

the $100 per share paid for the original common stock and the par value consideration received by the corporation for additional shares of first preferred stock issued during the applicable fiscal year.

No case is cited by either party and we have found no prior case which has considered the precise issue here presented. That issue is a relatively simple, narrow one, namely, whether the transfer by the corporation of a part of its earned surplus to capital, in an amount equal to the par value of second preferred shares which it issued in exchange for its old common stock, constituted "consideration" for which the second preferred was issued.

Section 521 of the Act, providing for the exemption of agricultural cooperatives, provides that the fact that a cooperative has capital stock is not a basis for denial of the exemption if the dividend rate of such stock is fixed to not exceed 8 percent "on the value of the consideration for which the stock was issued". 26 U.S.C.A. § 521.

If there was consideration for the second preferred stock, dividends paid on its stock by the corporation were very substantially less than the allowable 8 percent. On the other hand, if there was, in fact, no consideration for those shares, the dividends paid would substantially exceed this limitation governing plaintiff's specific statutory qualification to claim the exemption.

The Government contends that the earned surplus was the property of the corporation in which its shareholders had no vested interest; that the whole transaction was a mere bookkeeping entry capitalizing that surplus; and that, in effect, the exchange of stock, to the extent that the second preferred shares were involved, was a stock dividend to the shareholders.

On the other hand, plaintiff argues that there was full consideration for the issuance of the second preferred shares for the reasons that the shareholders gave up the right to control the corporation and the right to unlimited participation in its profits; that the shareholder would have received the earned surplus on a dissolution of the corporation, which they might have reinvested in a new cooperative venture; and that the provisions of Ill.Rev.Stat.1959, c. 32, § 465; authorize dissenting shareholders to demand payment for their stock, including a proportionate share of the book value of the earned surplus. It theorizes that, since reorganization procedures were possible which would have entailed a reinvestment of capital by all shareholders who chose to invest in the cooperative venture, the effect of the reorganization procedure followed should be treated as a reinvestment by the shareholders of their own capital in the new cooperative entity.

■ The "value of the consideration" is the key phrase of Section 521 bearing upon this issue. Though the plaintiff's position strikes a sympathetic chord, plaintiff must nevertheless establish that there was "consideration" moving to the corporation for the shares issued as a distribution of the earned surplus. That premise rests upon the established rule that a party claiming an exemption bears the burden of proving himself entitled thereto. E. g., United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40.

What was received by the corporation for the second preferred stock which might be said to have value and be called consideration? We conclude that the answer to that question must be: "Nothing."

■■ Shareholders have the right to select those who will manage the corporate affairs, to share in the corporation's profits by dividend distribution, and to participate in a distribution of the net assets of the corporation upon its dissolution. They, however, are not the owners in any legal sense of any part of the corporation's property. Sterling-Midland Coal Co. v. Chicago-Williamsville Coal Co., 336 Ill. 586, 593, 168 N.E. 655; Consolidated Coal Co. v. Miller, 236 Ill. 149, 153–154, 86 N.E. 205; DeKoven v. Alsop, 205 Ill. 309, 311, 68 N.E. 930, 63 L.R.A. 587. The corporate property in-

cludes the profits of the corporation until a dividend is declared by its board of directors. Ill.Rev.Stat.1959, c. 32, § 157.-41; DeKoven v. Alsop, 205 Ill. 309, 313, 68 N.E. 930, 63 L.R.A. 587.

In the latter case, the court further said that the capitalization of earnings by the declaration of a stock dividend, or the declaration of a stock dividend upon the increment to the value of the corporate assets, adds nothing to either the capital of the corporation or that of the shareholder. DeKoven v. Alsop, 205 Ill. at 315, 68 N.E. 930, 63 L.R.A. 587. The same asset value is represented by the stock certificates regardless of the number of shares represented.

In the instant case, the old corporation had capital assets, including the undistributed surplus, of $222,558.18, immediately before the reorganization. Immediately after the reorganization, the corporation had capital assets of the same amount. After reorganization, the shareholders' interest in the corporation was evidenced by the preferred stock issue, instead of by the 349 shares of old common stock.

Admittedly, there was a dramatic change in the shareholders' rights which, by consent, they accepted. They gave up control of the corporation and the right to the profits of the corporation, if any, beyond their fixed dividends. In exchange they received preferred capital shares of a value representative of their proportionate interests in the old corporation, having a fixed and limited dividend return. Their right to participate in any distribution of the corporate assets on dissolution is limited to the par value of their shares. The Illinois Agricultural Cooperatives Act provides that only the patrons, not the shareholders, of the corporation may share in any distribution

of net profits or accumulated surpluses. Ill.Rev.Stat.1959, Ch. 32, § 454.

It might be said that the shareholders accepted a detrimental change in their relationship to the corporation which could be called consideration, but it can hardly be said that that detriment (if it be such), which the shareholders accepted, conferred any corresponding benefit on the corporation. The Act speaks of a limitation not to exceed 8 percent of the "value" of the consideration received. 26 U.S.C.A. § 521. Unless "consideration," as here used, be limited to money consideration or other valuable property, no standard for the Act's application could be devised. There must be a dollar base against which to apply the percentage limitation. Even if the benefit-detriment theory of consideration could be developed, it does not follow that its value equalled the corporate surplus here capitalized.

The issuance of the second preferred shares simply changed the structure of the reorganized corporation's capital account. There was no consideration for them, at least which can be said to have determinable value.

■ We must conclude that no consideration was received by the corporation, for which the preferred shares were issued, beyond the amount of the shareholders' original investment. The dividends paid in each of the taxable years admittedly exceeded the allowable limit of 8 percent of the value of that consideration.

Accordingly, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is allowed, and judgment is entered dismissing the complaint, plaintiff to pay the costs of suit.