ETTER GRAIN COMPANY, Inc.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 2–902.

United States District Court,
N. D. Texas,
Amarillo Division.

June 7, 1971.

284

Neal R. Allen, of Culton, Morgan, Britain & White, Amarillo, Tex., for plaintiff.

Eldon B. Mahon, U. S. Atty., Dept. of Justice, Dallas, Tex., Johnnie M. Walters, Asst. Atty. Gen., Hubert M. Doster, Jerry A. Wells, William W. Guild, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

This civil action was filed by Etter Grain Company, Inc., against the United States of America for the refund of income taxes for fiscal years 1963, 1964, and 1966 through 1968 in the amount of $31,735.37. Alternatively, Plaintiff Etter Grain claims a refund in the amount of $36,199.02 for fiscal years 1964 through 1968. While this action was pending, the Internal Revenue Service assessed additional deficiencies of $2,423.97 and $5,966.16 for fiscal years 1967 and 1968, respectively, and this Court ordered a stay of proceedings on April 12, 1971 to allow the incorporation of the additional deficiencies. The case is presently before the Court on motions for summary judgment by both parties on the claimed deficiencies and on the claims for refund.

In September of 1962, J. B. Waide, Jr., John W. Harris, Jesse C. Cooper, Paulus F. Schroeter and Neal R. Allen incorporated Etter Grain Elevators (later changed to Etter Grain Company, Inc.), under the Cooperative Marketing Act of Texas, Vernon's Ann.Tex.Rev. Civ.Stat. art. 5737 et seq. Prior to this incorporation, Plaintiff had been an organization operated for profit under the same name. The assets of the old company were transferred to Plaintiff in a tax-free reorganization in which the above named individuals received preferred stock of the Plaintiff and realized neither taxable loss nor gain. The government contends that this transaction was accomplished simply for the purpose of creating a tax-exempt organization, and further that the paid-in capital on which dividends could be received was artificially increased at the time of the reorganization. This increase in value was accomplished by revaluing the assets of the old corporation by appraisal and then increasing the book value of the depreciable assets from $220,000.00 to $758,000.00. The accumulated profits and earnings of the old corporation in the amount of $203,000.00 was then transferred to the paid-in capital. The preferred stock in the new cooperative corporation was then issued to the holders of the capital stock of the old corporation.

Under the bylaws of the Plaintiff, each share of preferred stock is to have one vote, but each common stockholder is to have one vote regardless of the number of shares of common stock held by him. During the fiscal years 1963 through 1970, Waide and his associates received 68 percent of the profits while Plaintiff's farmer-members received 32 percent. Of the dividends actually distributed to the farmer-members, over 90 percent was distributed in the first three years of the operations of Plaintiff, and in four of the last five years of operations, farmer-members received no patronage dividends.

Under section 521 of the Internal Revenue Code, the Service found the

Plaintiff to be an exempt cooperative. Plaintiff paid preferred stock dividends in each fiscal year varying from 2.5% to 8% per annum on the par value of its preferred stock outstanding. The Service treated Plaintiff as a tax-exempt cooperative for fiscal years ending April 30, of 1963, 1964, and 1965. But as of April 30, 1966, the Internal Revenue Service disallowed the deduction.

Plaintiff contends that the association's method of organization and operation is in accordance with state law— art. 5737 V.A.C.S. et seq., which permits producers of agricultural products to form non-profit cooperative associations, with or without capital stock, to store, handle and market agricultural products, etc. Plaintiff says it relied on its own judgment and an independent appraisal and determined that the predecessor corporation had a fair market value of $996,000.00 at the time of the organization of the cooperative.

Farmers Co-ops are granted an "exemption" under section 521 of the Internal Revenue Code. This means that in computing its taxable income it may deduct: (1) patronage dividends paid to its members who market their products and purchase their supplies and equipment through the association, and (2) dividends paid on its capital stock (within certain limits).

On October 10, 1963, the IRS issued a "determination letter" saying that Plaintiff was exempt under 521. The government did not question such deductions until 1969.

These essential facts are undisputed and the case is ripe for determination by Summary Judgment and a hearing has been held and the Court heard arguments of counsel. Basically the following questions are to be decided:

1. Was the Plaintiff organized and operated as a cooperative corporation entitled to the exemption provided by Section 521 of the Internal Revenue Code?

2. Were the dividends to be paid the preferred stockholders upon the basis of the revaluation at the time of the organization or upon the value of the amounts invested by the stockholders in their shares of the old corporation?

3. May the Internal Revenue Service revoke its prior letter of exemption and compel payment of the income taxes due during the years that the letter of exemption was ostensibly in effect?

It is the opinion of this Court that the Plaintiff was not organized or operated as a cooperative as contemplated by Section 521.

Justice Brandeis, in a dissenting opinion in Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), which later was to become the law in this area, said that the aim of cooperatives is "economic democracy on lines of liberty, equality and fraternity." In Co-operative Grain & Supply Co. v. Commissioner, 407 F.2d 1158, (8 Cir. 1969), it was held that the fundamental characteristic of a co-op is that it be operated for the mutual benefit of its members as producers—not as stockholders. "Advantages which accrue to a member of a cooperative accrue primarily because of his patronage with the association and not because of any financial investment he may have made therein." As pointed out in the government's brief, the preferred stockholders received dividends of $354,000.00 but patronage dividends paid by the co-op were less than one-half of this amount.

Article 5750, V.A.C.S. (Marketing association) provides that "No member or stock-holder shall be entitled to more than one vote." In this case, each share of preferred stock gets one vote, so Waide et al (the preferred stockholders) control almost 100 percent of the votes and exercise a similar control over the cooperative and its affairs rather than such control being vested in the members and producers.

This failure to follow the statutory requirement as to one vote per stockholder rather than one vote per share, the payment of dividends principally to preferred stockholders as com-

pared to the amounts paid the members or producers, and the high valuation of the preferred stock (as later discussed) all add up to the fact that this Plaintiff was organized and operated in a manner that denied the members or producers any equality or mutual benefits. The facts are that the fruits from this organization accrued and were paid on the basis of financial investment rather than because of the members' patronage.

Dividends were paid to the preferred stockholders on the basis of 8% of the new valuation of the assets at the time the co-op was organized rather than on the value of the investment in the shares of stock in the old corporation by the stockholders. This was an incorrect computation.

Section 521(b) (2) Internal Revenue Code provides for a dividend not to exceed 8% (in this case) "on the value of the consideration for which the stock was issued."

The question of valuation would not be presented if, as an example, a new cooperative corporation was formed and each stockholder invested cash for his preferred shares. But here, where stock is exchanged, the value to be used for Sec. 521 purposes is the investment value of each stockholder in the old corporation, not its re-evaluation as was used by Plaintiff in this case. Laura Farmers Cooperative Elevator Co. v. United States, 273 F.Supp. 1019 (S.D.Ill., 1967) To hold otherwise, would only open another door or afford another device and method for operating a co-op for the advantage of the stockholders rather than the member-producers.

The Internal Revenue Service has the authority to revoke its letter of exemption and to retroactively collect taxes for the period the letter was outstanding. Dixon v. United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

Plaintiff, for the above reasons, was not from the time of its inception entitled to the letter of exemption. The Service made a mistake as to the law when the letter was issued and may now revoke and assess taxes due and payable in the absence of a proper exemption.

The attorneys will confer and submit a form of Summary Judgment for entry by the Court in favor of the Defendant on all issues by August 1, 1971.