**ETTER GRAIN COMPANY, Inc.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 71-3120.

United States Court of Appeals,
Fifth Circuit.

June 7, 1972.

Neal R. Allen, D. H. Culton, Culton, Morgan, Britain & White, Amarillo, Tex., for appellant Etter Grain Company, Inc.

Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., William W. Guild, Atty., Tax Division, Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Scott P. Crampton, Asst. Atty. Gen., William Hogan, Atty., Bennet N. Hollander, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellee; Willis T. Taylor, Asst. U. S. Atty., of counsel.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

A farmers' cooperative found eligible for federal income tax exemption under Section 521 of the Internal Revenue Code of 1954, Title 26, U.S.C., Section 521,[1] although required by Section 1381(b), Title 26, U.S.C., Section 1381(b),[2] to pay the taxes imposed by Section 11, Title 26, U.S.C., Section 11 (corporate income tax), and Section 1201, Title 26, U.S.C., Section 1201 (capital gains tax), is entitled, under Section

1. Title 26, U.S.C., § 521:
    "Exemption of farmers' cooperatives from tax

    (a) Exemption from tax.—A farmers' cooperative organization described in subsection (b) (1) shall be exempt from taxation under this subtitle except as otherwise provided in part I of subchapter T (sec. 1381 and following). Notwithstanding part I of subchapter T (sec. 1381 and following), such an organization shall be considered an organization exempt from income taxes for purposes of any law which refers to organizations exempt from income taxes.
    (b) Applicable rules.—

    (1) Exempt farmers' cooperatives.— The farmers' cooperatives exempt from taxation to the extent provided in subsection (a) are farmers', fruit growers', or like associations organized and operated on a cooperative basis (A) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (B) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses.
    (2) Organizations having capital stock.—Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 percent per annum, whichever is greater, on the value of the consideration for which the stock was

issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association.

    (3) Organizations maintaining reserve.—Exemption shall not be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose.

    (4) Transactions with nonmembers.— Exemption shall not be denied any such association which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members on which purchases supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases.
    (5) Business for the United States.— Business done for the United States or any of its agencies shall be disregarded in determining the right to exemption under this section."

2. Title 26, U.S.C., § 1381(b): "Tax on certain farmers' cooperatives—An organization described in subsection (a) (1) shall be subject to the taxes imposed by section 11 or 1201."

1381(a), Title 26, U.S.C., Section 1381(a),[3] and Section 1382(c), Title 26, U.S.C., Section 1382(c),[4] to deduct from its gross income, for federal income tax purposes, dividends paid on capital stock. The Internal Revenue Service determined that the Etter Grain Company, Inc. (taxpayer) did not qualify for tax exemption under Section 521. It therefore disallowed certain preferred stock dividend deductions and assessed deficiencies. The taxpayer paid the deficiencies and brought suit for a refund in the district court, which ruled in favor of the United States. Etter Grain Company, Inc. v. United States, N.D.Texas 1971, 331 F.Supp. 283. Upon this appeal from that decision, we affirm.

## I. THE FACTS

In the 1940's, J. E. McAvoy and Monroe Terrell formed a partnership which constructed and began to operate a grain elevator at Etter, Texas. Additional partnership interests were acquired in 1948 by J. B. Waide, Jr., Jesse C. Cooper, and John W. Harris. Thereafter, the five partners formed the Etter Grain Company, Inc., a Texas business corporation, and transferred their partnership interests to it in exchange for $80,000 worth of $100 par value stock (800 shares). Subsequently, McAvoy and Terrell sold their stock to Waide, Cooper and Harris, the other shareholders. These shareholders purchased an additional 446 shares of $100 par value stock for $44,600.00 in cash and then sold some of their shares to other persons. In 1959, another grain firm, Schroeter Grain Company, Inc., was merged into the corporation and its owner Paulus F. Schroeter, was given 300 shares of Etter Grain Company, Inc. $100 par value stock ($30,000) in exchange for his Schroeter stock.

On September 28, 1962, an appraisal was made of the physical assets of the Texas business corporation, Etter Grain Company, Inc., which valued the physical assets and other possessions of the corporation at $996,000.00. The taxpayer, then styled Etter Grain Elevators, was incorporated on or about October 3, 1962, under the provisions of the Texas Marketing Association Act, Vernon's Texas Civil Statutes Annotated, Article 5737 et seq. Twenty days later, on October 23, 1962, a reorganization was effected whereby the stockholders of Etter Grain Company, Inc. (Waide, Harris, Cooper, Schroeter and Neal R. Allen, hereinafter the Waide group) exchanged all their stock for the preferred stock of the taxpayer, Etter Grain Elevators, of the par value of $996,000.00. Etter Grain Company, Inc., the Texas business corporation, was then dissolved and the name of the Taxpayer, Etter Grain Elevators, was changed to Etter Grain Company, Inc.

In addition to the preferred stock issued to the Waide group, the taxpayer sold one share of its common stock to each of its farmer-patrons for the sum of $1.00 per share. Each member of the Waide group was also a farmer-patron and each purchased a single share of common stock at the $1.00 price. As a result of these stock issuances, the Waide group held, directly or indirectly, 15 of the taxpayer's common shares and 9,810 of its preferred shares. In addition, another 150 shares of preferred stock were issued in equal amounts to three other individuals.

Article 9 of the taxpayer's articles of incorporation provides that the holders of preferred stock are to receive eight percent of the par value of their stock each year in the form of dividends and that these dividends are to be paid out

3. Title 26, U.S.C., § 1381(a): "In general. —This part shall apply to—(1) any organization exempt from tax under section 521 (relating to exemption of farmers' cooperatives from tax) . . . ."

4. Title 26, U.S.C., § 1382(c): "Deduction for nonpatronage distributions, etc.—

In determining the taxable income of an organization described in section 1381(a) (1), there shall be allowed as a deduction (in addition to other deductions allowable under this chapter)—(1) amounts paid during the taxable year as dividends on its capital stock; . . . ."

of profits prior to the distribution of patronage dividends to the farmer-members. Article 4 of the taxpayer's bylaws provides that each share of preferred stock is to have one vote while each common shareholder is given only one vote regardless of the number of common shares he may hold.

The dividend history of the taxpayer is set forth in the following table:

|  | Fiscal Year Ended | Preferred Stock Dividends | Patronage Dividends |
|---|---|---|---|
| April 30, | 1963 | $41,035.18 | $66,571.96 |
|  | 1964 | 79,630.00 | 39,453.50 |
|  | 1965 | 39,839.96 | 39,333.56 |
|  | 1966 | 39,839.96 | NONE |
|  | 1967 | 24,900.00 | 15,106.71 |
|  | 1968 | 24,900.00 | NONE |
|  | 1969 | 79,680.00 | NONE |
|  | 1970 | 24,900.00 | NONE |

On October 10, 1963, the taxpayer was sent a letter from the Chief, Exempt Organizations Branch, Internal Revenue Service, Washington, D. C., stating that the taxpayer was exempt from income taxation under Section 521 of the Internal Revenue Code. The Internal Revenue Service treated the taxpayer as an exempt cooperative organization under Section 521 for the fiscal years ending April 30, 1963, 1964, and 1965. For the fiscal year ending April 30, 1966, however, following an audit, the Service disallowed a deduction for preferred stock dividends on the basis that the value of the consideration paid for the taxpayer's preferred stock had not been established. A deficiency was assessed against the taxpayer as a consequence of the disallowance and the assessment was paid under protest.

On August 26, 1970, the taxpayer brought suit in the court below for a refund of the tax paid.[5] The Internal Revenue Service, on February 19, 1971, purported to revoke its prior exemption determination letter of October 10, 1963, on a retroactive basis. It disallowed the deductions claimed by the taxpayer for stock dividends pertaining to the fiscal years ending April 30, 1967, and April 30, 1968, and assessed tax deficiencies accordingly. These deficiencies were paid under protest and on May 25, 1971, with leave of the district court, the taxpayer amended its complaint for a refund to include the fiscal years ending in 1967 and 1968.

## II. THE DISTRICT COURT PROCEEDINGS

In the district court, the United States contended that:

1. The taxpayer was not organized and operated as a cooperative corporation entitled to an exemption under Section 521 of the Internal Revenue Code.

2. The eight percent ceiling on permissible dividends on preferred stock was due to be computed on the basis of the amount paid in by the taxpayer's shareholders on the formation of the Etter Grain Company, Inc. in 1948, and not upon the valuation employed with respect to the taxpayer's formation in 1962.

3. The Internal Revenue Service made a mistake of law concerning the taxpayer's eligibility for an exemption under Section 521, and accordingly the Service had the authority to revoke its October 10, 1963 letter of exemption and collect taxes retroactively for the period the letter was outstanding.

On cross-motions for summary judgment, the district court ruled in favor of the United States on each of its three contentions. On this appeal, the taxpayer argues that the court below erred with respect to each of its determinations.

---

5. In addition to the matter of the deduction for the preferred stock dividend, the taxpayer sought to recover taxes paid after a claimed deduction for "shrinkage" was disallowed by the Internal Revenue Service. The "shrinkage" claim was conceded by the United States in the court below and is not contested on this appeal.

## III. THE TAXPAYER'S ORGANIZATIONAL STRUCTURE

Section 521(b) (1) of the Internal Revenue Code clearly reflects a legislative intent that exemptions granted under Section 521 be limited to entities "organized and operated on a cooperative basis". In addition, Section 521(b) (2) contemplates that the stock of exempt cooperatives will be owned by the producers who market their products or purchase their supplies and equipment through the association. These provisions envision tax exempt associations organized according to a model of a widely-based participatory democracy in which all the members are able to exercise a franchise of equal strength.

■ The taxpayer in this case does not conform to such a model. As noted earlier in this opinion, the Waide group controlled 9,810 preferred shares in the taxpayer (each with one vote) and 15 common shares (each with one vote). Although the taxpayer's corporate articles provide for the issuance of 1,000 shares of common stock, only 23 shares were issued at the time of incorporation and at the time of this action only 182 shares of common stock were outstanding. Obviously, the common shares and the preferred shares not controlled by the Waide group are powerless to match the voting strength of the Waide group.

The taxpayer counters this point by asserting that since it exists by virtue of the Texas Marketing Association Act, it is thereby automatically qualified for exempt status under Section 521 of the Internal Revenue Code. In reply, the United States notes that Article 5750, Vernon's Texas Civil Statutes Annotated (part of the Texas Marketing Association Act), provides that "no member or stockholder shall be entitled to more than one vote", a provision never complied with.

Finally, the taxpayer refers us to a typewritten provision which was added to the Internal Revenue Service's form letter of October 10, 1963, granting an exemption under Section 521:

"Since your preferred stock carries the right to vote, the issuance of such stock should be restricted to producers who market their products or purchase their supplies and equipment through your association".

From this provision the taxpayer maintains that the government accepted the very view for which the taxpayer now contends: that preferred stock may be voting stock, and thus control the association, if it is owned by the producers who market their products through the association. We believe that the taxpayer has read too much into the additional provision in the letter of October 10, 1963. That letter should not be construed as giving the Internal Revenue Service's blessing to a capital structure whereby a relatively small group of preferred stockholders, each member of which is also a farmer-patron, may effectively control the workings of the cooperative through the device of vesting each share of preferred stock with a vote. Such a construction would constitute an unauthorized departure from the mandates of Section 521(b) and, in the absence of conclusive evidence, is not to be imputed to the Service.

The district court correctly decided that the taxpayer was not organized and operated as a cooperative corporation entitled to an exemption under Section 521 of the Internal Revenue Code.

## IV. THE CONSIDERATION FOR THE PREFERRED STOCK

■ In the district court and here, the United States has argued that the proper value of the consideration given in exchange for the preferred stock of the taxpayer was at most $154,600.00. This figure is derived by the addition of the $80,000.00 in partnership assets contributed in 1948 to the old Etter Grain Company, Inc., the $44,600.00 in cash subsequently invested by the Waide group, and the $30,000.00 in stock paid by the old Etter Grain Company, Inc., for the stock of the Schroeter Grain Company, Inc. On this basis, the maxi-

mum annual preferred stock dividend which the taxpayer was permitted to pay under the eight percent ceiling of Section 521(b) (2) would come to $12,368.00. The United States asserts therefore that the statutory ceiling has been exceeded in every year of the taxpayer's history.

The taxpayer defends the $996,000.00 valuation given to the assets of the old Etter Grain Company, Inc. in 1962 by the following reasoning: (a) In 1962, six individuals owned all of the stock of the old corporation; (b) at that date, that stock had a value; (c) such value (based on the old corporation's assets) was $996,000.00; (d) the new cooperative association, formed in 1962, was legally separate and distinct from the old corporation and its shareholders; and (e) the consideration for which the preferred stock of the new cooperative association was issued was the stock of the old corporation which had such value of $996,000.00. From these premises the taxpayer urges us to conclude that the value of the consideration for which the preferred stock of the new cooperative association was issued was $996,000.00 and that dividends of up to eight percent paid thereon were within the statutory limits. We think this controversy was correctly resolved below:

"The question of valuation would not be presented if, as an example, a new cooperative corporation was formed and each stockholder invested cash for his preferred shares. But here, where stock is exchanged, the value to be used for Sec. 521 purposes is the investment value of each stockholder in the old corporation, not its re-evaluation as was used by Plaintiff in this case. Laura Farmers Cooperative Elevator Co. v. United States, 273 F.Supp. 1019 (S.D.Ill., 1967). To hold otherwise, would only open another

door or afford another device and method for operating a co-op for the advantage of the stockholders rather than the member-producers." 331 F. Supp. at 286.

The district court was right in disregarding the $996,000.00 valuation urged by the taxpayer for the assets which it acquired in 1962 from the old Etter Grain Company, Inc.

## V. THE RETROACTIVE REVOCATION OF THE EXEMPTION LETTER

■ The taxpayer renews before us its contention below that the Internal Revenue Service exceeded its authority by revoking retroactively the October 10, 1963 exemption letter. In support of its argument the taxpayer cites Rev.Proc. 69–3, 1969–1 Cum.Bull. 389:

"Sec. 8. Revocation or Modification of Exemption Rulings or Determination Letters

"01 An exemption ruling or determination letter may be revoked or modified by a ruling or determination letter addressed to the organization, or by a Revenue Ruling or other statement published in the Internal Revenue Bulletin. The revocation or modification may be retroactive if the organization omitted or misstated a material fact, operated in a manner materially different from that originally represented, or engaged in a prohibited transaction of the type described in Section 8.07."

The taxpayer urges that since it has never been accused of a material misstatement or omission [6] in connection with any of its submissions to the Internal Revenue Service, the retroactive application of the revocation letter of February 19, 1971 is precluded by the Service's own policy statement. To this the

6. We note in this regard that the Claim for Exemption form 1028 submitted to the Internal Revenue Service by the taxpayer June 24, 1963 disclosed no facts as to the genesis of the preferred stock. It simply listed in response to Question 6a: "State the number of shares of each class of Capital stock outstanding and the value of the consideration for which it was issued" the following:
"Preferred–9960 sh.–$100.00 per share
Common – 90 sh.–$ 1.00 per share".

United States replies that the Internal Revenue Service made a "mistake of law" in granting the taxpayer a Section 521 exemption on October 10, 1963 and that mistakes of this nature may be rectified retroactively.

Section 7805(b) of the Internal Revenue Code, Title 26, U.S.C. Section 7805(b), provides:

"The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

The Supreme Court dealt with the predecessor of Section 7805(b) in Automobile Club of Michigan v. Commissioner of Internal Revenue, 1957, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746. In 1934 and 1938 the Commissioner of Internal Revenue ruled that the Automobile Club of Michigan was exempt from federal income taxation because it was a "club" within the meaning of Section 101(9) of the Internal Revenue Code of 1934. In 1945 the Commissioner revoked those two rulings and applied the revocation retroactively to 1943 and 1944. The revocation was founded upon a determination that a "mistake of law" had been committed in 1934 and 1938 in granting exemptions to the taxpayer. The Court held that under Section 3791 of the Internal Revenue Code of 1939,[7] the Commissioner was empowered to revoke retroactively an exemption ruling and that such revocations would be disregarded only if the Commissioner had abused his discretion. No abuse of discretion was found in that case:

"We must, then, determine whether the retroactive action of the Commissioner was an abuse of discretion in the circumstances of this case. The action was the consequence of the reconsideration by the Commissioner, in 1943, of the correctness of the prior rulings exempting automobile clubs, initiated by a General Counsel Memorandum interpreting § 101(9) to be inapplicable to such organizations.

The Commissioner adopted the General Counsel's interpretation and proceeded to apply it, effective from 1943, indiscriminately to automobile clubs. We thus find no basis for disagreeing with the conclusion, reached by both the Tax Court and the Court of Appeals, that the Commissioner, having dealt with petitioner upon the same basis as other automobile clubs, did not abuse his discretion . . ." 353 U.S. at 185–186, 77 S.Ct. at 711, 1 L.Ed.2d at 751.

See, also, Dixon v. United States, 1965, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223.

We agree with the United States that the Internal Revenue Service committed, in 1963, a "mistake of law" when it extended a federal income tax exemption under Section 521 of the Internal Revenue Code to the taxpayer and that no abuse of discretion took place when, in 1971, the Service retroactively revoked the 1963 exemption letter. Whether the taxpayer's organizational structure comported with the model envisioned in Section 521(b) and whether the valuation assigned in 1962 to the assets of the old Etter Grain Company, Inc., was appropriate are both questions of law within the meaning of the Supreme Court's decision in *Automobile Club of Michigan,* supra. The taxpayer having reaped the benefits of Section 521 for several years (with the Waide group maintaining effective control over the taxpayer's affairs), it was not an abuse of discretion for the Internal Revenue Service to take action to recoup its lost taxes for fiscal year 1966 and thereafter.

The district court properly entered summary judgment in this case. That judgment is in all respects

Affirmed.

GOLDBERG, Circuit Judge (concurring specially):

Entertaining no sympathy with the taxpayer's ploys to externalize a tax ex-

---

7. The predecessor statute to Section 7805(b) of the Internal Revenue Code of 1954.

empt status where the internal mechanism reveals only a cosmetic deception, I am nonetheless disturbed by the transcendental rule that every error accepted and escutcheoned by the Internal Revenue Service can later be transmuted into a mistake of law, thus making this taxpayer's letter of exemption simply a piece of paper to be blown away by any subsequent shifting wind. Were I sailing in uncharted seas, I would be inclined to conclude that the Government's admitted mistake in this case was not a "mistake of law." The Government held all of the facts in the taxpayer's case at the time of the application for the Section 521 exemption. Subsequent to that 1963 application there were neither changes in those facts nor alterations in the applicable law. Nevertheless, the Government insists that its error in granting the taxpayer a Section 521 exemption constitutes a "mistake of law" within the confines of Automobile Club of Michigan v. Commissioner of Internal Revenue, 1957, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746. Given some clear steering point and a strong tailwind, I would be inclined to hold that an error by the Commissioner in the application of a clear and unchanged regulation to clear and unchanged facts should be binding upon the Government for purposes of any attempted retroactive revocation where the Commissioner's change of mind results wholly from a reassessment of the static facts under static law. The case law, however, is ambivalent, thus leaving me rudderless. *E. g., compare* Martin's Auto Trimming, Inc. v. Riddell, 9 Cir. 1960, 283 F.2d 503; H.S. D. Co. v. Kavanagh, 6 Cir. 1951, 191 F. 2d 831, with Tollefsen v. Commissioner of Internal Revenue, 2 Cir. 1970, 431 F. 2d 511, cert. denied, 1971, 401 U.S. 908, 91 S.Ct. 867, 27 L.Ed.2d 806; Travis v. Commissioner of Internal Revenue, 6 Cir. 1969, 406 F.2d 987.

There is not a word to which I take exception in the majority opinion until I come to Section V, where I become perturbed when asked to subscribe to a the-sis that the Government's solemn word is a nothing. However, buttressed only by my own perturbance, I concur, albeit reluctantly, in the majority opinion.