**A. DUDA & SONS COOPERATIVE ASSOCIATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 73-1246.**

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1974.

Scott P. Crampton, Asst. Atty. Gen., Helen E. Marmoll, Meyer Rothwacks, Attys., Tax Div., Dept. of Justice, Washington, D. C., Lee H. Henkel, Jr., Acting Chief Counsel, I. R. S., Washington, D. C., John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., Leonard J. Henzke, Jr., Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

George I. Meisel, Cleveland, Ohio, William Y. Akerman, Orlando, Fla., Robert H. Kennedy, Eric M. Oakley, Cleveland, Ohio, for plaintiff-appellee.

Richard H. Appert, American Bar Assoc., Section of Taxation, New York City, for amicus curiae.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Petition for rehearing was duly filed by plaintiff-appellee, supported by its brief, to which defendant-appellant filed its brief in opposition.

The petition for rehearing is granted, the original panel opinion dated June 6, 1974, is withdrawn, and this opinion is substituted in lieu thereof.

This appeal arises from a highly technical area of federal income taxation law superimposed upon a welter of confused and conflicting facts. Following a disasterous miscalculation by the government trial counsel and a less than lucid argument to this Court by the taxpayer, the government asks us to extend existing precedents in order to correct a pretrial error. We decline to do so.

I

Taxpayer, A. Duda & Sons Cooperative Association, is an agricultural cooperative formed in 1946 for the purpose of marketing the agricultural products of its member-producers. Among its original members were four members of the Duda family who at that time were organized in a partnership named A. Duda & Sons (hereinafter "Duda Partnership").

In early 1948, taxpayer applied for a ruling recognizing its exemption from income tax under § 101(12) of the Internal Revenue Code of 1939, the predecessor of § 521 of the Internal Revenue Code of 1954, 26 U.S.C. § 521. This application was rejected by the Commissioner on the grounds the taxpayer's voting was on a patronage basis, that taxpayer transacted approximately 90% of its business with the Duda Partnership, and that the patronage basis voting therefore contravened the requirements of mutuality of interest and equality of treatment under general cooperative law and was intended to protect the interests of the Duda Partnership. Taxpayer's attorney thereafter wrote the Commissioner protesting the rejection and stating, *inter alia*, that the Duda Partnership would not necessarily have the largest vote in the cooperative every year, since favorable weather conditions might enable any of the other members to have the dominant share of the tonnage to be marketed by the cooperative. The Commissioner again rejected the ruling request.

On April 23, 1948, taxpayer filed a formal protest of the rejection of the ruling request pointing out that the taxpayer's accounting records, which showed the Duda Partnership entitled to 90% of the cooperative's voting shares, were "in error." Hence, certificates issued to the Duda Partnership were recalled, and new certificates were issued to individual members of the Duda family. As a result, no one member of the cooperative held more than 25% of the total "retain" certificates.

On the basis of these and other representations of cooperative operation and equality of member treatment, the Internal Revenue Service issued an exemption letter cautioning that any changes in the character or method of taxpayer's operation should be reported immediately.

In 1953, apparently forgetting their previous "error," the Duda Partners formed a corporation, A. Duda & Sons, Inc., (hereinafter "Duda, Inc."). The shares previously held by the partners were withdrawn, and one share was issued to the corporation. The association operated as an exempt organization from 1948 through 1965, at which time a revenue agent was dispatched to audit taxpayer's records in light of the information returns it was required to file each year. In a letter and report to the taxpayer, the agent questioned the tax exempt status of the association in several respects, among which were the association's alleged failure to meet four "technical" requirements of § 521 [1] and the association's alleged failure to "operate as a cooperative," the latter by virtue of Duda, Inc.'s dominance. The agent cautioned, however, that his findings were "preliminary" and were designed to "clarify the issues" in the examination of the association.

[1]. 26 U.S.C. § 521 provides:

(a) *Exemption From Tax.*—A farmers' cooperative organization described in subsection (b)(1) shall be exempt from taxation under this subtitle except as otherwise provided in part I of subchapter T (sec. 1381 and following). Notwithstanding part I of subchapter T (sec. 1381 and following), such an organization shall be considered an organization exempt from income taxes for purposes of any law which refers to organizations exempt from income taxes.

(b) *Applicable Rules.*—

(1) *Exempt farmers' cooperatives.*—The farmers' cooperatives exempt from taxation to the extent provided in subsection (a) are farmers', fruit growers', or like associations organized and operated on a cooperative basis (A) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (B) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses.

(2) *Organizations having capital stock.*—Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 percent per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association.

(3) *Organizations maintaining reserve.*—Exemption shall not be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose.

(4) *Transactions with nonmembers.*—Exemption shall not be denied any such association which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, or which purchases supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases.

(5) *Business for the United States.*—Business done for the United States or any of its agencies shall be disregarded in determining the right to exemption under this section.

On December 29, 1965, the Acting District Director of the IRS sent taxpayer a determination letter revoking the association's tax exempt status. The letter cited only the failure to comply with the four technical requirements of the statutory exemption as the grounds for revocation.[2]

The Acting Director's letter revoked the 1948 ruling "as of September 1, 1956," and stated that the association would be "required to file federal income tax returns for the fiscal year ending August 31, 1962, and subsequent years." The association protested the inaccuracy of the factual conclusions relied upon to support the revocation but did not administratively appeal the decision,[3] for it had no immediate effect on the association's tax liabilities, since even non-exempt cooperatives are entitled to large deductions unavailable to other types of corporations. Thus, when the association filed the usual corporate income tax forms for 1962 and subsequent years, it claimed deductions under Subchapter T of Chapter 1 of the Code, 26 U.S.C. § 1381 et seq., on the ground that it was operating on a cooperative basis, and continued to pay no taxes.

On September 2, 1966, the IRS sent a "30-day letter" to the association, assessing proposed deficiencies for the years 1962 through 1965. The IRS disallowed the deductions taken under Subchapter T on the ground that the association was not "operating on a cooperative basis."

On November 28, 1966, the association filed a protest of the report which led to the 30-day letter. On August 22, 1968, a notice of deficiency ("90-day letter") was sent to the association. The notice disallowed the association's deductions again on the ground that during the years in issue the taxpayer was not operating as a cooperative. In 1969, taxpayer paid the additional assessed taxes and filed claims for refund with the IRS. After the requisite six months had passed (*see* 26 U.S.C. § 6532(a)), taxpayer commenced the suit for refund of the taxes, claiming that the patronage deductions were improperly disallowed and alternatively that it was exempt from taxes under § 521.

During a pre-trial conference on May 11, 1971, the government trial attorney stipulated that the four technical reasons cited in the Service's 1965 revocation letter were factually erroneous and that the revocation was not based upon taxpayer's alleged failure to operate as a cooperative. Further discovery was conducted, and the government argued that all evidence relating to the association's past or present status as an exempt organization should be excluded by the court. The government further contended that the question of whether the revocation was proper was a question of law for the court to decide.

The trial court considered the evidence and stipulations, reasoning that if the attempted revocation was based solely upon the taxpayer's alleged failure to comply with the four technical requirements and taxpayer in fact met these conditions, the revocation was without foundation and therefore a nullity. And if the revocation was void, there was no cause for considering the contested deductions, for taxpayer had no tax liability at all. Hence, on September 13, 1972, the district court ruled that:

The 1965 revocation of the exempt status of plaintiff, A. Duda & Sons Cooperative Association was invalid

2. The Acting Director's letter stated, in relevant part: "The examination of your books and records by Agent Frank Houghton of our Orlando office revealed (1) that since September 1, 1956, a substantial amount of your capital stock outstanding is held by producers who do not market their products or purchase equipment through the association; (2) your purchase of vegetables from non-members, to fill customers' requirements for vegetables not normally handled by the association, are not on a cooperative basis; (3) you failed to credit the profit from the hardware store activities to non-member patrons; (4) the amounts retained by the cooperative are unreasonable, and the use for which this money is used, i. e. unsecured interest-free advances or loans to one member does not appear to justify the maintenance of such a reserve."

3. See 26 C.F.R. § 601.201(n)(6).

and the defendant cannot challenge the association's status as "operating on a cooperative basis" in this action. The court finds, therefore, that the association is entitled to a full refund of all taxes and interest paid for the suit years.

Then, on October 18, 1972, although no summary judgment motions had been filed and no documents or testimony had been admitted into evidence, the court entered judgment for the appellee. The government filed a notice of appeal on December 14, 1972.

On July 10, 1973, upon a motion of the appellee to supplement the record, the district court set forth an order that at the May 11, 1971, conference counsel for the government stipulated that the revocation of the exemption

was based solely on the asserted noncompliance by the plaintiff with the technical requirements of Section 521 and that the plaintiff in fact met the said technical requirements of Section 521. Defendant's counsel also admitted that the attempted revocation had not been based, in whole or in part, on the contention that plaintiff was not "operating on a cooperative basis" during fiscal years 1962 through 1965.

These admissions led the court to conclude that the revocation of taxpayer's exempt status was invalid.

Following the entry of the order supplementing the record, the government moved this Court to strike the order from the record or, in the alternative, to relieve the government of the concession. This Court denied the government's motion in all respects. A. Duda & Sons Cooperative Association v. United States (No. 73–1246) (August 17, 1973). We now consider the propriety of the district court's *sua sponte* grant of summary judgment.

II

The government frames the issue as whether the "variance" between the grounds stated in the revocation letter and those asserted in the refund suit justify the dismissal. The government first argues that no "variance" existed between the letter of revocation and the Service's defense in the refund suit. The government maintains that the final notice of revocation contained a general ground sufficient to sustain the refund suit defense. Alternatively, the government contends that the agent's letter gave the taxpayer ample notice that the government felt taxpayer was not operating as a cooperative, and the fact that the final revocation notice listed only the four grounds did not prejudice the taxpayer, for only a proposed revocation can be appealed. The government then concludes by asserting that since the final revocation need state no grounds, indicating the incorrect grounds should not prejudice the government's case.

■ We find these arguments entirely without merit. We believe the government's erroneous approach stems from its incorrect statement of the issue upon appeal. First, we find no general ground for revocation in the district director's letter. The statement upon which the government relies [4] was merely a summary of the four previously discussed technical violations and could in no way be expected to apprise the taxpayer that the revocation was based upon an alleged failure to operate as a cooperative.

Second, the unsatisfactory manner in which the revocation was attempted makes it difficult to ascertain whether the district director's letter was appealable. Taxpayer received two letters, a preliminary letter from the auditing agent which indicated that it was intended to narrow the issues under dis-

4. The letter reads in relevant part: "Based upon the evidence presented it is our conclusion that your activities are not within the Code Regulation stated above. Accordingly, it is our conclusion that you are not an organization within the contemplation of § 521 of the Code and our ruling dated Augusted [sic] 18, 1948 is revoked as of September 1, 1956 and you are required to file Federal Income Tax returns for fiscal years ending August 31, 1962 and subsequent years."

cussion, and a final letter of revocation from the district director. The Statement of Procedural Rules in effect at the relevant time indicated that the district director must send the taxpayer both a proposed letter of revocation setting forth the grounds relied upon and a final letter of revocation.[5] Only the former is appealable. Hence, either the district director's single letter, in which the wrong grounds were indicated, is both the proposed and final revocation and therefore appealable, or the taxpayer never received the proposed revocation. In either case, the taxpayer was not properly informed of the government's intentions. We need not, however, base our conclusions upon the government's failure to abide by its own procedural rules, for as we indicate below, the government has not properly revoked the exemption and any issue of notice to the taxpayer is therefore rendered nugatory.

 Finally, the fact that the final letter need not set forth any grounds for revocation does not ameliorate the government's position. Regardless of the requirements for the final letter of revocation, the revocation itself must be legal and proper. Here, however, government trial counsel stipulated that the only grounds upon which the attempted revocation was based were erroneous. This stipulation had greater ramifications than a mere admission that the grounds stated in the final letter were incorrect; the government, in effect, conceded that the revocation itself was erroneous. Hence, the requirements of the final letter of revocation are of no consequence.

### III

The government next argues that even if some "variance" existed between the letter of revocation and defense at trial, it was so insignificant in light of all the circumstances as not to warrant voiding the government's defense. The government concedes that the IRS is expected to follow both the letter and spirit of the law but explains that the proposed and final ruling revocations occurred at an early stage and a low level in the audit process and that taxpayer is generally entitled to several further administrative hearings before the tax is finally assessed and collected. The provision for numerous hearings in the Statement of Procedural Rules, contends the government, indicates that a change in the Service's position may be necessary as the case is more fully presented. Moreover, the government maintains that it would be unduly restrictive to bind the Service indefinitely to a legal position originally outlined at the District Director level.

 The notion that the government should be able to change its defense in a tax refund suit as new and more detailed facts come to light is an appealing one. However, government counsel in the trial court stipulated that the attempted revocation was not based, in whole or in part, on the contention the taxpayer was not "operating on a cooperative basis." The government now wishes to espouse the defense that it abjured by stipulation below. It is well settled that stipulations of fact fairly entered into are controlling and conclusive, and courts are bound to enforce them, *see e. g.*, United States v. Righter, 400 F.2d 344, 351 (8th Cir. 1968); Osborne v. United States, 351 F.2d 111, 120 (8th Cir. 1965), even if the government is the party bound, *see* Fenis v. Finch, 436 F.2d 831 (8th Cir. 1971). Thus, the United States is bound by a statement of its attorney made at a pre-

5. Section 601.201(n)(11) provides in relevant part: "If a district director concludes, in the course of examining an information return, or from any other source, that a ruling or a determination letter holding an organization to be exempt should be revoked or modified, the organization will be advised in writing of the proposed action and the rea-

sons therefor. The district office will also advise the organization of its rights to protest the proposed action by submitting a statement of facts, law, and arguments in support of its continued exemption, and of its rights to an informal conference in the district office."

trial conference to the same extent as any other litigant. *See, e. g.,* United States v. Fallbrook Public Utility District, 165 F.Supp. 806 (S.D.Cal.1958). This Court has already refused on a prior occasion to relieve the government of stipulations made by it to the trial court, A. Duda & Sons Cooperative Association v. United States, No. 73–1246 (August 17, 1973), and we again refuse to do so.

## IV

In its oral argument and briefs to this Court the government makes much of its ability to retroactively revoke a taxpayer's income tax exemption. Indeed, the Supreme Court has held that the Commissioner may retroactively revoke a taxpayer's exemption if the original decision to grant the exemption was based upon a "mistake of law." *See,* Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); Etter Grain Company, Inc. v. United States, 462 F.2d 259 (5th Cir. 1972). Likewise, the rules in effect in 1965 specify that a ruling or determination letter could be revoked retroactively "if there has been an omission or misstatement of material fact" or "if the organization operated in a manner materially different from that originally represented." Rev.Pro. 62–30, 1962–2 Cum.Bull. 512 (26 C.F.R. § 601.-201(n)(10)(iii)); *see* Huff-Cook Mutual Burial Association v. United States, 327 F.Supp. 1209 (W.D.Va.1971). The government here contends that it can show both an omission of material fact and operation in a manner materially different from that originally represented and hence retroactive revocation should be permitted.

■ The precise goal of the government's argument is unclear, as we have indicated the Service's attempted revocation of taxpayer's exemption was never effected because it was based on erroneous grounds. There has been no new letter of revocation from the Service prior to our decision. Therefore, there is no letter of revocation to be applied retroactively or otherwise.

■ The government has had an adequate opportunity to properly deal with this taxpayer with regard to the years here in issue. Therefore, the government's request for additional time to issue a new letter of revocation retroactive to 1961 is also denied.

Affirmed.